**Freddie WILLIAMS, Petitioner,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Respondent.**

**Misc. No. 5605.**

United States District Court
E. D. Virginia,
Norfolk Division.

Dec. 15, 1966.

No appearance for petitioner.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION and ORDER

DALTON, District Judge.

On August 23, 1966, this court, upon prior consideration of the case, ordered that a hearing be held in the matter of petitioner's habeas corpus proceeding. Petitioner now presents this court with a trial brief urging that the hearing be waived and a writ of habeas corpus issue immediately. The facts of the case and petitioner's contentions which justified the hearing can best be presented by reciting the earlier opinion and order:

This cause comes before the court upon a petition for writ of habeas corpus, filed *in forma pauperis*, by a state prisoner pursuant to the provisions of Title 28 U.S.C. § 2254. Issues have been joined by the respondent who has filed an answer to the petition and a motion to dismiss.

The petitioner is confined in the Virginia State Penitentiary pursuant to judgment in the Hustings Court of the City of Richmond, Part II, rendered on December 21, 1945. At this time the petitioner, represented by court-appointed counsel was tried on two counts of robbery and one count of attempted robbery; the case was heard by the court without a jury and the petitioner was convicted on all three counts. The sentence was confinement for eighteen years on each count, the sentences to run consecutively.

An appeal from the conviction was denied for failure to perfect the appeal in the time required by statute. Nothing further was done in the case until July of 1964, when the petitioner filed a petition for writ of habeas corpus in the Hustings Court of the City of Richmond, Part II. A hearing was held by that court, wherein the petitioner appeared in person and through court-appointed counsel, along with the attorney who had represented him at his trial and one of the officers who had arrested him. The petition was subsequently denied by order dated July 28, 1965. This decision was appealed to the Supreme Court of Appeals of Virginia, but that court denied the petition for writ of error on April 27, 1966. The petition presently before this court was filed on July 20, 1966.

In this petition the following allegations are made in support of the petitioner's claim that he is being held in violation of his constitutional rights: that he was convicted solely on the basis of a confession which was the product of coercion by the investigating police officers and which was obtained from him when he was unrepresented by counsel; that the representation afforded him by counsel was ineffective, in that counsel was not appointed until the day of his trial; that he was denied a fair trial and due process of law due to the failure of the trial court to exclude improper evidence.

It appears that the petitioner has exhausted his state remedies on the first two allegations. As to the third, it is not clear what evidence the petitioner is referring to, but presumably it is the confession. If that be the case, this al-

legation may be considered a repetition of the second. If this is not the point intended to be raised by the third allegation, then it is something which has not yet been presented to the state court and which would not for that reason be properly before this court.

Most of the facts surrounding the arrest and trial appear in the stipulation of the evidence which was prepared in 1946 for the appeal which failed. The court will try to point out the important facts which appear therein, and which appear to some extent in the transcript from the habeas corpus hearing.

The two robberies and one attempted robbery all took place in South Richmond during the period from September 27, 1945 to October 6, 1945. In each case the victim was a woman (it is not clear from the record but it appears that they were all white women) who was walking home around 10:30 or 11:00 o'clock p. m. when assaulted by a negro man, who struck her and grabbed her pocketbook.

The petitioner, who is a negro, was fifteen years old at the time of his arrest and was still in grammar school. He was picked up in the West End of Richmond around 11:00 o'clock on the night of October 9, 1945. He testified at his trial that he had a streetcar pass and liked to ride, that he had gotten off the streetcar which he had been riding that night because he was tired of riding, and that he was sitting in an alley when he was arrested by police officers. He was taken to a juvenile detention home. The petitioner testified at his trial that he was roughed up by the officers at the police station before being taken to the detention home. Two to four days later, four police officers took the petitioner from the detention home and took him in a police car to see the women he had allegedly robbed.

They went first to the home of a Mrs. Whitten. She apparently had been told by the police that they were bringing a man to her house who had been accused of the crime in order that she might identify him. When the police brought the petitioner by her house, she was sitting on the front porch with her husband and said to her husband, as the police car stopped in front, that the man who the police were bringing by was the one who had assaulted her. When the police confronted her with the petitioner she said that he was the one who had robbed her.

The police next went to the homes of the other two women, a Mrs. Maxey and a Mrs. Perrall. Both of them testified that when the officers came by to see them the officers said that the petitioner had confessed that he was the man. Nevertheless, the women were unable to identify him as the man who had assaulted them either at that time or later at the trial. Mrs. Whitten did identify the petitioner at the trial as being her assailant.

After this had occurred, the officers drove past the places where the crimes had been committed and out to a spot about which there is some dispute. The petitioner alleges that it was in the woods. The officers testified that it was on Riverside Drive and still within the city limits of Richmond. In any event, there is no doubt that the officers took the petitioner somewhere in the car, with two of them in the front seat and two in the back, the petitioner seated between them. At this point there is a direct conflict in the evidence. The petitioner alleges that the officers showed him a blackjack and threatened to beat him if he did not confess to the crimes. The officers claim that they did nothing of the sort, that the petitioner confessed of his own free will, with no threats of any kind on their part. Whichever be true, it is clear that the petitioner confessed at that time. The officers testified that in addition he took them by the scenes of the crimes before they locked him up again. The petitioner testified at his trial that all he did was take the officers back by the places that they had already pointed out to him and that he did that because again he was threatened with a beating if he did not.

This was substantially all of the evidence at the trial. Most of what the officers had to say was related by only one

of them, with the others stating that they had nothing to add to what had already been said. One of them did say that the petitioner had deposited seventy-five dollars in the bank just two days after the last robbery. However the petitioner testified that the seventy-five dollars was money he had saved from a job he had had sanding floors, which money he had deposited all at one time.

Most of these facts must be taken from the original trial record. There was very little evidence presented at the state habeas corpus hearing on the subject of the allegedly coerced confessions. One officer was put on the stand and asked a few questions; he denied any coercion. The defendant also testified briefly on this point.

█ █ It is the decision of the court that the petitioner shall be afforded a plenary hearing in which to present evidence in support of his claim that the confession was coerced. The petitioner has made out at least a prima facie case —he was but fifteen years old when arrested, a suspect in what was apparently a "wave" of these robberies, and a negro who was undeniably questioned in some fashion by four white policemen who had him alone in an automobile. The hearing in the state court developed relatively few facts on the question of the confession. In view of the fact that the petitioner was sentenced to a total of fifty-four years in the penitentiary and received this sentence at the age of fifteen, the court feels that the proper course to take is to give the petitioner every possible chance to substantiate the allegations which he has made in his petition.

█ It appears from the state habeas corpus hearing that the allegations as to the representation afforded the petitioner by court-appointed counsel are at least in part without merit. While the order appointing his attorney is dated on the same day that the trial was held, it is clear that the petitioner had talked with his attorney at least once before the trial and that his attorney investigated the case during a period of at least ten days before trial. It appears as though counsel was adequately prepared for trial under the circumstances and afforded the petitioner the representation to which he was entitled under the constitution. However, it is not clear from the record just why petitioner's appeal was dismissed for want of proper perfection. At the state habeas corpus hearing the attorney who represented the petitioner at his trial stated that he was not appointed by the court to prosecute the appeal but was instead "employed by three ladies whose names I do not recall at this time * * * and they said they were interested in the guarantee of Constitutional rights to people." He also testified that the then Secretary of the Communist Party had approached him on the subject of representing the petitioner on appeal, but that he had turned her down. Whatever may have been the case, the petition for writ of error was dismissed by the Supreme Court of Appeals of Virginia on June 11, 1946, for the reason that it had not been filed within the time required by statute. If the petitioner seeks to base his claim that he was denied the effective assistance of counsel in whole or in part on the failure of his appeal in 1946, he should be prepared at the hearing to present whatever evidence he can on the circumstances surrounding this appeal.

It is ordered that a hearing be held in the above matter in the United States District Court for the Eastern District of Virginia, Norfolk Division, on a date to be later fixed, and upon request of petitioner for the appointment of counsel to represent him, it is further ordered that Terry Davis, Esq., of the Norfolk, Virginia Bar be appointed to represent the petitioner in connection with such hearing.

The Clerk of this court is directed to send a copy of this opinion and order to counsel, including Mr. Davis, and to the petitioner.

Petitioner now urges this court to waive the hearing and allow the writ of habeas corpus to issue on the basis of the Stipulation of Evidence. It is the position of the petitioner that the Stipulation of Evidence shows facts sufficient to

grant the writ as a matter of law. He relies upon Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L. Ed.2d 895 (1966), and United States ex rel. Weinstein v. Fay, 333 F.2d 815 (2d Cir. 1964).

In the *Davis* case, which reversed the Fourth Circuit Court of Appeals, 339 F.2d 770, petitioner was an impoverished Negro with a third or fourth grade education. After escaping from a prison camp, he was arrested in connection with a rape-murder investigation. After sixteen days incarceration, petitioner finally confessed. The United States Supreme Court held that petitioner's confessions were the involuntary end product of coercive influences and thus constitutionally inadmissible. Petitioner had not been advised of his right to remain silent, nor of his right to counsel. The non-retroactivity of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not affect the court's duty to consider the voluntariness of statements under standards begun prior to these recent cases. Under the *Davis* rule, therefore, the fact petitioner was not advised of his right to remain silent is considered a significant factor in determining the voluntariness of later statements. In this regard it is the court's duty to examine the entire record and make an independent determination of the ultimate issue of voluntariness. Because no one other than the police spoke to petitioner during his sixteen days of confinement was significant in determining voluntariness.

In the case before this court petitioner concedes that a shorter confinement is involved. However, whereas Davis was an adult, petitioner was only fifteen years old. In addition petitioner argues that the incarceration might have continued indefinitely if petitioner had not confessed. Petitioner suggests that because of his four day confinement, under the circumstances which suggests possible coercive influences, the writ must issue as a matter of law without a hearing.

This court however believes that the Stipulation of Evidence is in conflict with regard to the period of confinement prior to petitioner's confession. Petitioner suggests he was held for four days. The testifying police officer indicates as little as two days elapsed between petitioner's arrest and his confession. The hearing ordered by this court should determine such factual conflicts, which were not fully resolved in the prior state court hearing.

Petitioner also relies upon the *Fay* case where the Second Circuit Court of Appeals held that the confession given by a prisoner after only thirty-six hours was involuntary. This court notes that the petitioner in that instance was suffering from bleeding gums which required medical attention during the brief period of incarceration and added to the coercive pressure upon the prisoner. In addition he was arraigned on a clearly "sham" charge and paroled to the police for the purpose of maintaining dominion over him to extract inculpatory statements.

The factual distinctions between these cases relied upon by petitioner and the present case prevent this court from granting petitioner's motion.

The purpose of the hearing is to determine the actual facts surrounding petitioner's incarceration and confession which will enable the court to make an independent determination of the issue of voluntariness. A finding that the confession was involuntary would mean that its use at the trial violated petitioner's constitutional right to a fair trial.

For these reasons petitioner's motion to waive the hearing previously ordered and grant a writ of habeas corpus as a matter of law is denied. It is ordered that a hearing be held in this matter in the United States District Court for the Eastern District of Virginia, Norfolk Division, on a date to be later fixed, as previously ordered.

The Clerk of this court is directed to send a copy of this opinion and order to counsel and to the petitioner.