THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HARRY SOHN, Appellant.

(Argued October 21, 1935; decided January 7, 1936.)

*Arthur H. Rose* and *Leonard E. Turits* for appellant. There was a failure of proof as to that part of subdivision 1 of section 887 of the Code of Criminal Procedure reading, " lives without employment." (*Matter of Case,* 214 N. Y. 199; *Harris* v. *State of Texas,* 229 S. W. Rep. 875.) There was failure of proof of " lack of visible means of support." (*People* v. *Cramer,* 139 Misc. Rep. 545; *Matter of Forbes,* 11 Abb. Pr. 52; *People* v. *Schmidt,* 220 N. Y. Supp. 647.)

*William Copeland Dodge, District Attorney (Felix C. Benvenga* and *LeRoy Mandle* of counsel), for respondent. The evidence amply justified conviction. (*Branch* v. *State,* 73 Tex. Cr. Rep. 471; *Matter of Forbes,* 19 How. Pr. 457; *State* v. *Burton,* 178 S. W. Rep. 219; *Powell* v. *State,* 103 Tex. Cr. Rep. 1; *Tenement House Dept.* v. *McDevitt,* 215 N. Y. 160; *People* v. *Cramer,* 139 Misc. Rep. 545; *Carter* v. *State,* 126 Ga. 570; *People* v. *Maxwell,* 83 Hun, 157; *People* v. *Willi,* 109 Misc. Rep. 79; 194 App. Div. 946; *Brown* v. *State,* 4 Ala. App. 122; *Gordon* v. *People,* 33 N. Y. 501; *People* v. *Leonardo,* 199 N. Y. 432; *People* v.

*Trombino,* 238 App. Div. 61; 262 N. Y. 689; *People* v. *Smith,* 114 App. Div. 513; *People* v. *Sugarman,* 248 N. Y. 255; *People* v. *Rosenzweig,* 265 N. Y. 323; *People* v. *Cashin,* 259 N. Y. 434.)

CRANE, Ch. J.   This is an appeal from a judgment of conviction in the Magistrate's Court of the city of New York for an alleged violation of subdivision 1 of section 887 of the Code of Criminal Procedure, sentencing the defendant to a term of three months in the workhouse. The judgment was affirmed by the Court of Special Sessions. The appeal comes here upon the certificate of a judge of this court, pursuant to section 520 of the Code of Criminal Procedure.

Title VI of the Code of Criminal Procedure is of proceedings respecting vagrants.   Who are vagrants?   Section 887 tells us in the following words:

" 1. A person who, not having visible means to maintain himself, lives without employment."

The evidence is very meager to sustain this charge, and is given by the police officer as follows:

" On February 25th, at about 3:50 P. M., in 1520 Broadway, a poolroom, I observed the defendant and another man, now here, downstairs, in the poolroom, talking.   I went over to the defendant and said, ' What are you doing down here?'   And this defendant said, ' I ain't doing nothing.'   I said, ' Are you working?'   He said, ' No, I am not.'   I said, ' How long has it been since you have worked?'   He said, ' About eight months.'   I said, ' How do you get along?'   He said, ' I have friends to take care of me.'   I said, ' Where is the last place you have worked?'   He gave me some place in the public market, your Honor.   I said, ' What are you doing with this fellow, Miller?'   He said, ' Nothing, just hanging around.   I am off the racket; I don't do that any more.'   I said, ' When did you stop?'   He said, ' I have been shot about four months ago; I was in the hospital about eight weeks.   Ever since I come out of the hospital I ain't doing nothing.'

"Q. Did you search the defendant? A. Yes, sir.

"Q. Did you find anything on him? A. Yes, sir; fifteen cents.

"Q. When did he say he worked last? A. About eight months ago."

This is all the testimony for the prosecution.

The defendant took the stand and stated that he lived at 3505 Rochambeau avenue, Bronx, and continued: "I worked three weeks ago in a shoe-store, Saturdays and extra, in Fordham Road. I have a home in New York and I have a sister with a home in New York; and she told me she will help me find employment. I have made a few errors in the past, I will admit; but I am trying to do the best I can now. I was in Loew's at the time. I come out of the picture-show and I went downstairs to the poolroom for a minute or so."

There was some evidence about the reputation of the defendant and of his previous convictions, but this is all that bears upon the question of vagrancy, and we give the evidence to emphasize the point that there is something lacking to make out the offense.

Taking the words of subdivision 1 as they read would put in jail a great many people in these days who are out of employment and cannot find work. Our relief rolls testify to persons who have no visible means to maintain themselves and live without employment. They are maintained by the public through sheer necessity. This section has reference to those hangers-on of society, ne'er-do-wells, loafers who stand about our street corners and public places without any visible means of employment and refuse to work when employment can be had. A man does not become a vagrant who wants a job and cannot find it. He is a vagrant when a job of some kind can be obtained and he prefers to loaf around and do nothing, having apparently no ascertainable means of support. A vagrant is one who is apt to become a public charge through his own laziness. The neglect to seek

employment seems essential, since without it mere misfortune would be punishable. (*Matter of Jordan,* 90 Mich. 3.) In *Matter of Karnstrom* (297 Mo. 384) the statute provided: "Every person found tramping or wandering around from place to place without any visible means of support, shall be deemed a vagrant." It was held constitutional. In *Matter of Clancy* (112 Kan. 247) the statute read: "Any person engaged in any unlawful calling whatever, or who shall be found loitering without visible means of support in any community, or who, being without visible means of support, shall refuse to work when work at fair wages is to be procured in the community * * *," is a vagrant.

The Law Revision Commission of this State has collected the general provisions of the vagrancy statutes of the various States from which it appears that the common requirement is the refusal to work when work can be had (Legislative Document [1935], No. 60 [K], p. 34), wherein it was stated regarding this section and subdivision: "It penalizes a state of being which the accused may, in times of unemployment, be helpless to remedy. * * * If the New York statute is to be construed to mean that it does not include persons without visible means of support who have made an honest effort to procure employment, it is defective in not so providing."

The Commission refers us to the California statute as a model for legislation. It reads: "Every person * * * without visible means of living who has the physical ability to work, and who does not seek employment, nor labor when employment is offered him, * * * is a vagrant." (California Penal Code [Deering, 1931], pt. 1, tit. 15. See ch. 2, § 647.)

We think this is what our statute does mean when the words "vagrants," "visible means of support" and "without employment" are used. Long usage has fixed their significance. These words taken together indicate that the thing aimed at is the loafer or lazy man, the one

who hangs about streets and public places without employment or visible means of support when he could with effort obtain something to do. It would be absurd to say that one physically unable to work or an able-bodied person who could not get work came within the meaning of this section.

The evidence against Sohn did not bring him within this definition of " vagrancy." That he was not working was proved, and besides, he admits it. He had a criminal record, but this did not make him a vagrant. He said he had a home and was receiving help from his family, that he had tried to find employment and could not. This evidence is uncontradicted. So far as the record shows he was one of the unemployed, who could not find a job. Even though our suspicions, growing out of his past record, incline us to believe that he did not want to work, we cannot put men in jail even for minor offenses on mere suspicion.

The judgments should be reversed and the information dismissed.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., not sitting.

Judgments reversed, etc.