THE PEOPLE OF THE STATE OF NEW YORK, Complainant, *v.* VINCENT GESINO, Defendant.

City Magistrates' Court of New York, Borough of Brooklyn, Ninth District, December 11, 1936.

*William F. X. Geoghan, District Attorney [Nicholas Psaki, Assistant District Attorney,* of counsel], for the complainant.

*J. S. Milchman,* for the defendant.

SAVARESE, C. M. The defendant was charged with being a vagrant under section 887, subdivision 1, of the Code of Criminal Procedure. A vagrant therein is defined as a " person who, not having visible means to maintain himself, lives without employment." Case tried December 4, 1936. Decision reserved.

The arresting officers testified they entered a store premises in the borough of Brooklyn on November 23, 1936, where the defendany was seen seated at a table at which two women were also seated. That the defendant recognized one of the officers, got up and walked toward them. One of the officers went to the table where the defendant had been seated and picked up a note book lying thereon containing writing together with several loose papers, forms and receipts, all of which were admitted in evidence as belonging to the defendant. The women were questioned in defendant's presence (and they said they were discussing installment payments on some furniture. The women did not testify). The police officer testified he examined the said book which contained entries of persons' names with figures underneath apparently representing loans made and installment repayments. The officer further testified that he said to the defendant something about his being engaged in the " Shylocking " business; that the defendant said he did not know what the officer was talking about and that he disclaimed ownership of the book or any knowledge of its contents. On further questioning, the defendant said he had not worked for over two

years; that he lived by borrowing money from his friends and his brothers occasionally helped him out. Upon being searched, the officers found three or four dollars in bills and some loose change and a key on defendant's person. When asked where he got the money, defendant replied he had borrowed seventy-five cents from a friend with which he won the balance playing cards. When asked where he lived, defendant first gave one address and when the officers suggested going there with defendant, he gave another address. They proceeded to the latter address where the key found on the defendant fitted the lock on the door. A woman was found therein who stated the defendant lived with her. (The officers testified the woman was not defendant's wife.) The defendant was placed under arrest charged with vagrancy.

It was conceded that the defendant had a police record of several arrests and some convictions.

The defendant took the stand and testified (a) that he did not own the book or papers seized by the officers; (b) that he could not know what was written therein because he could neither read nor write; (c) that he had not worked for more than two years because he was partially crippled and incapacitated because of five bullet wounds (two in his body and three in his head; two of the latter he claimed were still embedded there) and by reason thereof could not work; (d) that he resided at the premises which were opened by the key in his possession; (e) that the woman therein was his wife; (f) that he was supported in part by four stepdaughters ("his wife's daughters"), all of whom were working, and who resided at said premises; (g) that he also received eight to ten dollars a week from a brother who was in the steam heating business for whom and for which he drove an automobile two or three times a week; (h) that still another brother would give him a couple or three dollars from time to time as he would need it; (i) that he also borrowed from friends; (j) that he had a license from the Motor Vehicle Bureau to drive an automobile, which was produced and marked in evidence.

When the defendant was confronted with one of the loose papers found in the said book, he requested that someone explain what it was before he would make any statements. When told it was a receipt in his name given by a telegraph company for the transmittal of money by wire, he admitted that it was his. Asked how it found its way in the book he said he placed it there because he did not want to lose it.

Upon request by defense counsel, the court took notice of the fact that the defendant appeared to be partially paralyzed on one side and that he walked with a decided limp.

The only other witness for the defense was the brother who is in the steam heating business. He had the appearance of a respectable citizen and business man. His testimony, however, was a very bad attempt to help a brother in trouble. His statements were confused and inconsistent and could not be believed. The record speaks for itself.

The defense counsel in his motion to dismiss advanced the argument that the defendant had visible means to maintain himself; that if the defendant was without employment it was because of his physical incapacity, and that the arrest was made upon pure suspicion. In support thereof he cited the case of *People* v. *Sohn* (269 N. Y. 330), wherein Chief Judge CRANE wrote the opinion for the Court of Appeals.

The rule laid down in the *Sohn Case* (*supra*) is entirely sound, but the facts upon which the decision rests are in no wise analogous to the facts in the instant case.

In the first place, the defendant's testimony with respect to his effort to establish having " visible means to maintain himself " are a series of incredible fabrications.

In the second place, if any part of the testimony should be believed, it must be that portion which confirms the People's charge that " he lives without employment."

Further, in one breath the defendant says he is physically incapacitated to work, while in the next he says he drives an automobile for his brother two or three times a week for which he receives eight or ten dollars.

Finally, if there be any suspicion in this case, it is the well-founded suspicion that the defendant was engaged in the illegal " Shylocking " or loan shark business, about which he could not testify without more serious results, and which led up to the arrest.

The court, therefore, finds the defendant guilty as charged. Defendant is remanded until December 16, 1936, at one P. M., for fingerprint investigation report and sentence.

The court further finds that because of the physical defects of the defendant and the fact that he claims to have two bullets still imbedded in his head, he would be a menace to public safety driving an automobile; hence his driving license is ordered surrendered and revoked forthwith.