UNITED STATES of America ex rel. Burton WEINSTEIN, Appellant,

v.

Edward M. FAY, Warden of Green Haven Prison, Respondent-Appellee.

No. 437, Docket 28751.

United States Court of Appeals Second Circuit.

Argued April 22, 1964.

Decided July 2, 1964.

■

816

Victor M. Earle, III, New York City (Leon B. Polsky, New York City, on the brief), for appellant.

Mortimer Sattler, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge.

Burton Weinstein appeals from the denial without a hearing of a writ of habeas corpus by the United States District Court for the Southern District of New York. The principal question presented by this appeal is whether relator's confession obtained by the police after 36 hours' detention was voluntary. If the confession was involuntary, its use at the trial violated Weinstein's constitutional right to a fair trial and his conviction must be reversed. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Stroble v. California, 343 U.S. 181, 190, 72 S.Ct. 599, 96 L.Ed. 872 (1952); Ashcraft v.

Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944).

Judge Palmieri held the confession voluntary and further found that the state fact-finding procedure was sufficiently reliable and complete to obviate the necessity of holding the independent evidentiary hearing relator requested in his pro se petition for a writ of habeas corpus. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). From our examination of the uncontroverted evidence in the state court record, however, United States ex rel. Everett v. Murphy, 329 F.2d 68, 70 (2 Cir.), cert. denied, 84 S.Ct. 1648 (June 9, 1964) [1] we conclude that the confession was involuntary. Accordingly, we reverse with instructions to grant the writ unless relator is promptly retried.

 Weinstein is serving a 7½ to 15-year sentence imposed upon him as a second offender on May 17, 1960 by the Kings County Court following his conviction after a trial before Judge Starkey, sitting without a jury, for the crimes of burglary, third degree, and petit larceny. The conviction was affirmed without opinion by both the Appellate Division and the New York Court of Appeals. People v. Weinstein, 13 A.D.2d 1034, 217 N.Y.S.2d 262 (2d Dep't 1961), aff'd, 11 N.Y.2d 1098, 230 N.Y.S.2d 721, 184 N.E. 2d 312 (1962), cert. denied, 373 U.S. 904, 83 S.Ct. 1292, 10 L.Ed.2d 200 (1963). Prior to the denial of certiorari the Court of Appeals amended its remittitur to show that it had passed upon the constitutional issues urged on the application for habeas corpus, viz. illegal search and involuntary confession. 12 N.Y.2d 673, 233 N.Y.S.2d 467, 185 N.E.2d 905 (1962). By presenting these claims to the New York courts, relator has exhausted his state remedies.

1. As in Everett, there are allegations of police brutality; these need not be considered inasmuch as the uncontroverted evidence alone establishes that the confession was involuntary.

2. On *voir dire* one of the arresting officers testified that he and his partner had been

We turn to the uncontroverted facts in the state court record. Relator was taken into police custody in front of his home at 2947 West 29th Street, Brooklyn, New York, at 4:00 P.M. on September 17, 1959, and was held in police custody for some forty-two hours, until 10:00 A.M. on September 19, before being arraigned on the burglary charge. During the course of this detention, relator was subjected to intermittent questioning which resulted in his making oral and written admissions which were used against him.

At trial, Detective Schulz, one of the arresting officers, testified that after Weinstein was taken into custody he was taken to the stationhouse where he was questioned about a television set that the arresting officers had observed earlier in the day in his apartment,[2] and a toy gun and badge which was in his possession when arrested. The interrogation was interrupted twice during September 17 to get medical assistance for Weinstein who suffered from bleeding gums; between 7:00 and 8:00 P.M. he was taken to a pharmacy to secure some medicine which a dentist had prescribed earlier in the day, and at about 11:00 P.M. Weinstein was taken to Coney Island Hospital for further treatment.

From the hospital relator was taken to his home. As he had no key, he entered through a window followed by one of the detectives; the second detective was later admitted through the front door. The three left the house with the television set and returned to the stationhouse where the interrogation continued. It was not until about 1:15 A.M. on September 18—more than nine hours after he had been taken into custody—that Weinstein was formally charged with vagrancy, a misdemeanor. New York Code of Criminal Procedure, § 887.

through Weinstein's apartment about 10:00 A.M. on September 17, 1959 while only Weinstein's wife was present and that they, at that time, had observed the television set. Their presence was not further explained.

Weinstein was finally brought before a magistrate for arraignment at 11:00 the next morning. Advising him only perfunctorily of his right to counsel and calling on him to plead immediately, the magistrate gave him little chance at this time to assert his rights. Detective Schulz thereafter asked the magistrate to parole Weinstein in his custody. Following a conference at the bench—outside of the hearing of both Weinstein and the court reporter—the magistrate ordered the requested parole until Weinstein should appear again on September 24, six days later.[3]

The vagrancy charge was a sham. Weinstein had $30 in his possession when taken into custody and was walking, not loitering, in front of his own home where he lived with his wife. See People v. Sohn, 269 N.Y. 330, 333, 199 N.E. 501, 502 (1936); Comment, 37 N.Y.U.L.Rev. 102, 109–11 (1962). Furthermore, it is unlikely that the ex parte conference that took place between the magistrate and the police officer would have occurred had the relator been represented by counsel. And it is even more unlikely that he would have been paroled into police custody. It appears the police concocted the vagrancy charge merely to prolong Weinstein's detention so that their interrogation could continue uninterrupted. See Culombe v. Connecticut, 367 U.S. 568, 599–601, 611–612, 631–633, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

After arraignment on the vagrancy charge, Weinstein was taken to the stationhouse for further questioning and on a trip to visit certain recently burglarized homes in Brooklyn. Following more admissions, he was booked on the burglary charge at 11:15 P.M. on September 18.

Finally at 3:30 in the morning of September 19, 1959, relator made a full, written confession to an assistant district attorney which was later used at his trial. He was arraigned on the burglary charge at about 10:00 A.M. on September 19. At this time he complained about his mouth and the magistrate ordered that he be taken again to Coney Island Hospital for medical attention. Weinstein was not represented by counsel during this time and was not assigned any until September 24, the adjourned date of his preliminary hearing.

■ The police denied any physical mistreatment of Weinstein during their interrogation and characterized him as being cooperative. While the questioning was not continuous it appears that he was given no substantial respite. Undoubtedly his bleeding gums were a factor in reducing his will to resist. Two handkerchiefs were saturated with blood from his mouth. In addition, we must consider the police conduct in arraigning Weinstein on a sham charge and then

3. The minutes of the hearing read in part as follows:
"Complaint was read to the defendant.
"Court Officer: You have the right to communicate with relatives or friends by letter or telephone free of charge. You have the right to the aid of counsel at every stage of the proceedings and before any further proceedings. You have the right to an adjournment to procure counsel. How do you plead?
"The Defendant: Plea of not guilty.
"The Court: What date for trial?
"Police Officer Schulz: Any day.
"The Court: September 24th.
"(To the defendant): Where do you live?
"The Defendant: 2947 East 28th [sic] West 29th Street.
"The Court: Did you verify the address, Officer Schulz?

"Police Officer Schulz: I would like him paroled in my custody, your Honor.
"The Court: Why?
"Police Officer Schulz: May I speak to you for a second?
"The Court: Go ahead.
"(There was a conference between the Police Officer and the Court before the bench, not in the hearing of the stenographer.)
"The Court: The defendant will be paroled. Make sure you appear on the 24th. If you fail to appear, you will be charged with the offense known as parole jumping."
While it is not clear from the transcript of the arraignment that relator was paroled into police custody, it is undisputed that the police retained custody over him and one of the arresting officers so testified.

having him paroled into their custody for the sole purpose of maintaining dominion over him in order to extract inculpatory statements. This conduct must have intimidated him into believing he would be held until he confessed, possibly for the entire six-day period from September 18 to September 24.

The undisputed facts and the logical inferences flowing therefrom impel us to conclude that the confession was involuntary. It is hard to understand otherwise why it took the police almost 36 hours to obtain a confession from an allegedly cooperative suspect. Without any means of securing advice as to his rights, Weinstein had little choice but to tell the officers what they expected to hear.

We take note of the recent decisions of the New York Court of Appeals, People v. Robinson, 13 N.Y.2d 296, 246 N.Y.S.2d 623, 196 N.E.2d 261 (1963) and People v. Davis, 13 N.Y.2d 690, 241 N.Y.S.2d 172, 191 N.E.2d 674 (1963), which have in effect overruled People v. Weinstein, supra, and apparently adopted the rule there urged in the dissent of Judges Fuld and Van Voorhis. Under these decisions is seems clear that Weinstein's conviction would be reversed if his appeal were to reach the New York courts now.

However, the New York Court of Appeals has stated that it will not apply such a rule retroactively. People v. Howard, 12 N.Y.2d 65, 236 N.Y.S.2d 39, 187 N.E.2d 113 (1962), cert. denied, 374 U.S. 840, 83 S.Ct. 1893, 10 L.Ed.2d 1060 (1963). We therefore conclude that it would be futile to require the relator to apply again to the New York courts.

While we are not unmindful of the doctrines of comity and federalism which underlie the exhaustion rule, we believe that our decision on the merits does not violate those principles. Under the traditional concepts of exhaustion only one opportunity through proper channels need be afforded a state to pass upon a question before the habeas court should look to the merits. Brown v. Allen, 344 U.S. 443, 448 n. 3, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Relator has done this by direct appeal which culminated in the denial of certiorari. We believe that the habeas applicant should not be compelled to return to the state courts after having had his questions adjudicated on the merits by the highest state court merely because of a change in the state substantive law—unless, of course, the state has shown that the new rule will be applied retroactively, a course which New York has refused to follow. See People v. Howard, supra. To hold otherwise would be to exhaust "the prisoner rather than the state remedy * * *." United States ex rel. Kling v. LaVallee, 306 F.2d 199, 203 (2 Cir. 1962) [Friendly, J., concurring].

Having found the confession involuntary we need not discuss the other points raised.

We note the services of Victor Earle, III, who has represented the petitioner and we commend him for his zealous and effective advocacy as assigned counsel.

Reversed and remanded with instructions to grant the writ unless relator is promptly retried.