Burke, J.
On three occasions in late 1964, each about a month apart, the plaintiff, Charles Fenster, was arrested by the New York City police and charged with violation of subdivision 1 of section 887 of the Code of Criminal Procedure (New York’s vagrancy statute). Fenster was charged under the language of this section with being “ a person who, not having visible means to maintain himself, lives without employment”. Following each arrest he was acquitted of the violation charged, but conviction on such charges would have subjected him to possible • imprisonment for up to six months. (Code Crim. Pro., § 892.)
The record does not indicate why this plaintiff was singled out for such treatment by the police, especially in the face of previous acquittalsf'but Fenster, apparently concerned at the likelihood of further arrests on this same charge, sought, following his third arrest, an order in the nature of prohibition against the Criminal Court of the City of New York barring that court from hearing and determining the charge of vagrancy levelled against him following his third arrest. In this action he attacked the constitutionality of the statute, but prohibition was denied in our lower courts, and in this court the decisions below were affirmed on the sole ground that the remedy of prohibition was discretionary (Matter of Fenster v. Criminal Ct. of City of N. Y., 17 N Y 2d 641).
*312 After our decision in this earlier action and following his third acquittal on this vagrancy charge, plaintiff applied to a three-Judge Federal court in the Southern District of New York for a declaration of the statute’s unconstitutionality. This was denied on the ground that plaintiff had a State remedy by way of an application to the New York courts for a declaratory judgment (264 F. Supp. 153), and the United States Supreme Court affirmed (see 386 U. S. 10).
Plaintiff next initiated the present action seeking declaratory relief in the Supreme Court, New York County (Lupiano, J.). He is again before this court on a direct appeal from the judgment of the Supreme Court, at Special Term, denying his motion for summary judgment declaring subdivision 1 of section 887 unconstitutional and dismissing his complaint. He urges that we at last strike down this law.
Plaintiff’s appeal is appealable directly to this court as the sole question raised and decided below and the sole issue on this appeal is the constitutionality of subdivision 1 of our vagrancy statute (see CPLR 5601, subd. [b], par. 2) and declaratory relief of the kind here sought is available in our courts under the circumstances here presented (see Bookcase, Inc. v. Broderick, 18 NY 2d 71).
Plaintiff’s arguments against the constitutionality of this statute are as follows: (1) It interferes with and impairs the liberty of a citizen to exercise his faculties so long as he does not interfere with others; (2) it requires involuntary servitude in violation of the Thirteenth Amendment; (3) it denies plaintiff the equal protection of the laws; (4) it imposes cruel and unusual punishment on a person because of his status; and (5) it deprives plaintiff of his privileges and immunities guaranteed by the Federal Constitution.
/"“"'We are in agreement with plaintiff that subdivision 1 of section 887 of the Code of Criminal Procedure is unconstitutional, on the ground that it violates due process and constitutes an overreaching of the proper limitations of the police power in that it unreasonably makes criminal and provides punishment for conduct (if we can call idleness conduct) of an individual which in no way impinges on the rights or interests of others and which has in no way been demonstrated to have anything more than the most tenuous connection with prevention of crime *313 and preservation of the public order (on which ground the Attorney-General would have us sustain the statute), other than, perhaps, as a means of harassing, punishing or apprehending suspected criminals in an unconstitutional fashion. $¥e do not reach any of the other arguments for invalidity urged by plaintiff.
The crime of common-law vagrancy, which is what subdivision 1 of our statute involves, contains three elements: (1) being without visible means of support, (2) being without employment, and (3) being able to work but refusing to do so. (See Note, The Vagrancy Concept Reconsidered, 37 N. Y. U. L. Rev. 102, 109.) In a more homely fashion our statute has been described as directed against the ‘1 loafer or lazy man, the one who hangs about streets and public places without employment or visible means of support when he could with effort obtain something to do.” (People v. Sohn, 269 N. Y. 330, 334-335.) Such statutes have their origins in feudal laws aimed against runaway serfs and the English “poor laws” (see Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L. J. 1; Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv. L. Rev. 1203; Note, The Vagrancy Concept Reconsidered, 37 N. Y. U. L. Rev. 102) and were originally designed as a means of regulating the economic life of the populace. The modern emphasis or stated justification for retaining such laws has shifted, however, to the prevention or control of crime and common-law vagrancy remains a crime in virtually all American jurisdictions. (See, e.g., Lacey, op. cit., supra; Note, The Vagrancy Concept Reconsidered, supra.) “
As a number of commentators have observed, common-law vagrancy, in contrast to most other crimes recognized in our law, is not defined in terms of an act or acts but in terms of a status or condition of being (see, e.g., Lacey, op. cit., supra, p. 1203). The essential element of this crime, as well as of other status crimes, is “the accused’s having a certain personal condition or being a person of a specified character.” (Ibid.) Other crimes of status would include “ gangster statutes ” (such as was involved in Lanzetta v. Neio Jersey, 306 U. S. 451) or statutes making it criminal to be a narcotics addict (such as was involved in Robinson v. California, 370 U. S. 660). Under our own section 887 a number of other “ per *314 sonal conditions ” are declared to make one a vagrant and thus subject to imprisonment, e.g., that of being a prostitute or panderer (§ 887, subd. 4) or of being a beggar on the public ways (§ 887, subd. 5). Such statutes cannot stand if they would make criminal a condition, such as one resulting from illness, over which the accused has no control (Robinson v. California, supra; see, also, People v. Sohn, supra) or if the class of persons coming within their ambit is so vaguely defined as to make it unclear to potential violators just what conduct will subject them to criminal liability and what will not (Lansetta v. New Jersey, supra). -Such constitutional problems would not appear to be directly involved in the instant case, however, as under our Sohn decision (supra) it seems clear that physical' or even psychological inability to work would bar conviction as a vagrant and plaintiff does not appear to attack the statute as void for vagueness (for which reason we need not reach this point). Another constitutional problem, of major proportions, does, however, appear in this case, namely, whether our statute constitutes a valid exercise of the police power.
Initially, it must be observed that a strong presumption of validity attaches to statutes and that the burden of proving invalidity is upon those who challenge their constitutionality to establish this beyond a reasonable doubt (see Matter of Van Berkel v. Power, 16 N Y 2d 37, 40, and the cases cited therein), but it must likewise be noted that a statute whose effect is to curtail the liberty of individuals to live their lives as they would and whose justification is claimed to lie in the exercise of the police power of the State must bear a reasonable relationship to, some proportion to, the alleged public good on account of which this restriction on individual liberty would be justified. As Judge Fuld (as he was then) observed in People v. Bunis (9 N Y 2d 1, 4), “ The police power is ‘ very broad and comprehensive ’ and in its exercise ‘ the conduct of an individual and the use of property may be regulated so as to interfere, to some extent, with the freedom of the one and the enjoyment of the other ’, * * * But, in order for an exercise of the police power to be valid, there must be ‘ some fair, just and reasonable connection ’ between it and the promotion of the health, comfort, safety and welfare of society ”.
*315 The Attorney-General of New York, appearing herein pursuant to section 71 of the Executive Law in defense of the statute’s constitutionality, cites to us various statements from our own decisions and from the decisions of our lower courts in support of vagrancy statutes as a valid exercise of the police power. The general thrust of these decisions is that in order to prevent there coming into existence a “ class of able-bodied vagrants * * * [supporting] themselves by preying on society and thus [threatening] the public peace and security” (People ex rel. Stolofsky v. Superintendent, 259 N. Y. 115, 118), to “ compel individuals to engage in some legitimate and gainful occupation from which they might maintain themselves, and thus remove the temptation to lead a life of crime or become public charges” (People v. Banwer, 22 N. Y. S. 2d 566, 569 [Magistrate’s Ct., Brooklyn, 1940]), the able-bodied poor may be made, subject to the sanctions of the criminal law, to accept available employment. This view of the matter does, of course, raise the possibility of interesting Thirteenth Amendment problems, and plaintiff strenuously urges these as grounds for reversal, and it also raises an interesting “ equal protection ” question as to whether persons of means are entitled any more than the poor to enjoy the allegedly debilitating effects of idleness, but, on a more fundamental level, we feel the statute is defective on the ground that, whatever purpose and role it may or may not have served in an earlier day, and however valid or invalid may be the proposition that the able-bodied unemployed poor are a likely source of crime, in this era of widespread efforts to motivate and educate the poor toward economic betterment of themselves, of the “War on Poverty” and all its varied programs, it is obvious to all that the vagrancy laws have been abandoned by our governmental authorities as a,means of “persuading” unemployed poor persons to seek work (the Attorney-General does not even suggest that the vagrancy laws would be invoked against such people today). It is also obvious that today the only persons arrested and prosecuted as common-law vagrants are alcoholic derelicts and other unfortunates, whose only crime, if any, is against themselves, and whose main offense usually consists in their leaving the environs of skid row and disturbing by their presence the sensibilities of residents of nicer *316 parts of the community, or suspected criminals, with respect to whom the authorities do not have enough evidence to make a proper arrest or secure a conviction on the crime suspected. (See Foote, Vagrancy-type Law and its Administration, 104 U. of Pa. L. Rev. 603; Lacey, op. cit., supra, pp. 1217-1219; see, also, People v. Robinson, 13 N Y 2d 296.) As to the former, it seems clear that they are more properly objects of the welfare laws and public health programs than of the criminal law and, as to the latter, it should by now be clear to our governmental authorities that the vagrancy laws were never intended to be and may not be used as an administrative short cut to avoid the requirements of constitutional due process in the administration of criminal justice. If it is only to allow arrests and criminal prosecutions for vagrancy to continue against individuals such as these that the Attorney-General would have us uphold the statute, then it must fall. And despite certain fairly recent eases upholding similar statutes (see Hicks v. District of Columbia, 197 A. 2d 154 [D. C. Ct. App., 1964], cert. dsmd. as “ imprevidently granted ” 383 U. S. 252 [1966]; Dominguez v. City & County of Denver, 147 Col. 233), we can, in fact, see no other purpose in our statute today and, therefore, find it invalid.
The judgment below should be reversed, with costs against the intervenor-respondent, and judgment directed to be entered for plaintiff as demanded in the complaint.