Dianne KNOWLTON

v.

The STATE of Maine and Ward Murphy,
Supt. Women's Correctional Center.

Supreme Judicial Court of Maine.

Oct. 6, 1969.

R. John Wuesthoff, Saco, for plaintiff.

John W. Benoit, Jr., Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

On report, arising from a petition for post-conviction relief, to determine the constitutional validity of that portion of 17 M.R.S.A. § 3758 [1] which purports to make an offense of being "idle and disorderly persons having no visible means of support, neglecting all lawful calling or employment," under which petitioner was convicted and sentenced to an indeterminate period at the Women's Correctional Center. The facts from which the conviction resulted are not before us.

Specifically the validity of the quoted portion of the statute is questioned under the provisions of the 5th, 13th and 14th Amendments to the Constitution of the United States (prohibition of slavery or involuntary servitude, abridgement of privilege or immunity of a citizen of the United States, guarantee of due process and equal protection of the laws) and companion provisions in the Constitution of Maine.

█ It is a fundamental common law concept that crimes must be defined with appropriate definitude, and that concept is now held to be an essential element of due process of law.

1. "All rogues, vagabonds and idle persons going about in any town in the county begging; persons using any subtle craft, jugglery or unlawful games or plays, or for the sake of gain pretending to have knowledge in physiognomy, palmistry, to tell destinies or fortunes, or to discover lost or stolen goods; common pipers, fiddlers, runaways, drunkards, nightwalkers, railers, brawlers and pilferers; persons wanton or lascivious in speech or behavior, or neglecting their callings or employments, misspending what they earn and not providing for the support of themselves and their families; all idle and disorderly persons having no visible means of support, neglecting all lawful calling or employment; and all idle and disorderly persons who neglect all lawful calling or employment and misspend their time by frequenting disorderly houses, houses of ill fame or gaming houses may, on complaint under oath before the District Court in the division where he is a resident, be committed to jail or to the house of correction in the town where the person belongs or is found, for a term of not more than 90 days."

"The underlying principle is that all are entitled to be informed as to what the state commands or forbids and no one should be required, at peril of life, liberty, or property, to speculate as to the meaning of penal statutes. Thus, fundamental fairness requires that no man be held criminally responsible for conduct which he could not reasonably understand to be proscribed. * * *.

\* \* \* \* \* \*

"A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application lacks the first essential of due process of law. However, no more than a reasonable degree of certainty can be demanded." 21 Am. Jur.2d Criminal Law § 17.

It is the alleged deficiency in these characteristics which has spawned an increasing number of attacks on that class of statute or ordinance which is known as a "vagrancy" law. See Annot. "Validity of Vagrancy Statutes and Ordinances" 25 A.L.R.3d 792.

The criticism of these laws is embodied in the contention that they are "unconstitutionally vague" and that such vagueness violates due process, or exceeds police power, or is in violation of the involuntary servitude or equal protection clause of the Constitution, or that they deprive citizens of their natural rights and immunities,— as to which, it must be noted, there is widespread division of opinion. All of these criticisms are voiced at the statute under consideration.

Basically it is contended, as to vagrancy statutes, that the law imposes a penalty for non-action, for neutral passivity, or upon a person's condition "status, mode of life, or reputation." (See 21 Am.Jur.2d Criminal Law § 5).

"All of these offenses are characterized by the fact that they are defined in terms of *being* rather than in terms of *acting*." Lacey, Vagrancy and Other Crimes of Personal Condition. 66 Harvard L.R. 1203 (1952–53).[2]

In the light of these general considerations we examine our statute which may be described as a "straddle" between what may be termed the conventional vagrancy statute, such as discussed in Landry v. Daley, 280 F.Supp. 960 (N.D.Ill.1968); Ricks v. District of Columbia, 134 U.S.App. D.C. ——, 414 F.2d 1097 (1968) and authorities and treatis analyses there cited; and Lazarus v. Faircloth, 301 F.Supp. 266 (U.S.D.C. So.Fla. (3 Judge) 6/9/69) (presently unreported) 5 Cr. Law Reporter 2233 (6/18/69), and the statute proscribing affirmative conduct defined with due process specificity.

But for the word "disorderly" in our statute it would fall prey to constitutional attack. Does the word "disorderly" which reflects affirmative conduct of disorderliness as recognized in State v. Allen, Me., 235 A.2d 529, [5] 531, and 12 Am.Jur.2d Breach of Peace and Disorderly Conduct § 30, save it? See also Annotation, "Vagueness as Invalidating Statutes or Ordinances Dealing with Disorderly Persons or Conduct" 12 A.L.R.3d 1448.

In Chartrand v. Commonwealth sub nom Alegata v. Commonwealth (and four companion cases) 353 Mass. 287, 231 N.E.2d 201, 210 (1967) it was held that the phrase "idle and disorderly persons" as ones of a class subject to criminal sanctions were sufficiently definite "to withstand constitutional challenge on the ground of vagueness" [10] page 211, but the Court seemed to equate the prohibition with "acting" rather than with "being." In the companion case of *Patch,* page 205, charged as "an idle person who not having any visible means of

2. See also Watts, Disorderly Conduct Statutes in our Changing Society, 9 William and Mary L.R. 349 (1967–68); Foote, Vagrancy-type Law and Its Administration, 104 Pa.L.R. 603 (1955–56); and Douglas, Vagrancy and Arrest on Suspicion, 70 Yale Law Journal 1 (1960–61).

support has lived without lawful employment," it was held that the statute lacked due process specificity, was an invalid exercise of police power and was unconstitutionally vague.

The rationale of *Chartrand* and *Patch* cannot be reconciled with a statute containing both the *Chartrand* phrase and the *Patch* phrase in one proscription under which proof of idleness, disorderliness, lack of visible means of support and neglect of all lawful calling or employment is necessary.

If the statute be held to interdict "acting," while disorderly conduct has a recognized definition,—and the man of "common intelligence" knows what conduct leading to disorder may be, "idleness", "no visible means of support" and "neglecting all lawful calling and employment," without intelligible standards to guide any of the accused, the apprehending officer, or the court, leave the suspect at the "mercy of the officers' whim or caprice." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, [10, 11] 1311, 93 L.Ed. 1879. Such phrasings are too vague, and repugnant to due process.

If the statute be held to interdict "being," —a condition, status, mode of life, it exceeds the police power of the State. See Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, [2] 1420, 8 L.Ed.2d 758 (1962); Lanzetta et al. v. State of N. J., 306 U.S. 451, 59 S.Ct. 618, [5] 621, 83 L.Ed. 888 (1939); Commonwealth v. Carpenter, 325 Mass. 519, 91 N.E.2d 666 (1950); and Fenster v. Leary, 20 N.Y.2d 309, 282 N.Y. S.2d 739, 229 N.E.2d 426, [2], [3], [4], 428, 25 A.L.R.3d 784 (1967).

Our statute as a whole falls into the "vagrancy" category, has been substantially the same since R.S.1821 (Chapter 111, Section 5) and followed the Massachusetts statute of March 26, 1788. See State v. Burgess, 123 Me. 393, 394, 123 A. 178. While some accusations under the statute may be based upon firm constitutional ground, *Burgess, supra,* as to which we here make no finding, the clause under consideration is not one of them.

The case is remanded to the Superior Court for the issuance of the writ discharging appellant from custody.

So ordered.

TAPLEY, J., sat at argument but retired before the opinion was adopted.