**Eric GORDON et al., Plaintiffs,**

**v.**

**Honorable Victor Hugo SCHIRO et al., Defendants.**

**Civ. A. No. 67–987.**

United States District Court, E. D. Louisiana, New Orleans Division.

March 19, 1970.

Benjamin E. Smith of Smith, Scheuermann & Jones, Robert Glass, Ronald J. Rakosky of New Orleans Legal Assistance Corp., New Orleans, La., for plaintiffs.

Alvin J. Liska, City Atty., Beuker F. Amann, Jackson P. McNeely, Asst. City Attys., New Orleans, La., for defendants.

COMISKEY, District Judge.

The plaintiffs have launched a full-scale assault upon certain subsections of two New Orleans ordinances relative to vagrancy and idle and disorderly persons. The ordinances under attack are § 42–85(5), (7) and (8) and § 42–90 of the Code of the City of New Orleans, adopted by Ordinance No. 828 M.C.S., as amended through March 31, 1969. It was alleged in the original complaint that the plaintiffs have been arrested and charged under these ordinances and are presently threatened with the future enforcement of such ordinances against them. They brought this suit as a class action on behalf of all other citizens who have been arrested and charged under these ordinances and who are threatened with future arrests pursuant thereto. Plaintiffs pray that a declaratory judgment issue declaring these ordinances unconstitutional and that a permanent injunction issue restraining defendants from arresting or prosecuting the plaintiffs and the class they represent under the ordinances in question.

Subsequent to the filing of this suit, counsel for plaintiffs submitted to this Court certified copies of the affidavits charging specific violations of municipal ordinances against the plaintiffs and intervenors (who intervened as party plaintiffs). These affidavits, according to plaintiffs' counsel, indicate that "828 M.C.S. § 42–85(5), (7), and (8) and § 42–90(2), (3), (4), (5), (6) are specifically charged against these plaintiffs

and intervenors and thus are properly before the Court for decision." There is no evidence in the record that § 42–90(1), (7) or (8)—the remaining subsections of § 42–90—have been used against these plaintiffs or the class they represent, nor is there any evidence that plaintiffs have been threatened with the enforcement of these three subsections against them. Therefore, we will not pass on the validity of these three subsections in this case.

The plaintiffs now bring a motion for a summary judgment on the constitutionality of these ordinances. We shall consider in turn the subsections involved in this action.

§ 42–85(5): "The following persons shall be guilty of vagrancy * * * Able-bodied persons without lawful means of support who do not seek employment and take employment when it is available to them."

■■ This subsection is vehemently assailed on the dual grounds of vagueness and overbreadth. These two concepts should be distinguished. A statute is unconstitutionally vague and violates due process of law when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). On the other hand, a "statute, although lacking neither clarity nor precision, is void for 'overbreadth,' * * * [when] it offends the constitutional principle that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'" Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967); NAACP v. Alabama ex rel. Flowers, 377 U.S. 288, 307, 84 S.Ct. 1302, 1304, 12 L.Ed.2d 325.

■ Similar statutory provisions around the country have recently been found constitutionally vulnerable on both of the above grounds. A number of courts have declared similar ordinances and statutes unconstitutionally vague, but these laws contained the term "no visible means of support" rather than "no lawful means of support." Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky. 1967); Smith v. Hill, 285 F.Supp. 556 (E.D.N.C. 1968); Goldman v. Knecht, 295 F.Supp. 897 (D.Colo. 1969). It may be that the term "without lawful means of support," which is contained in the New Orleans ordinance presently under fire, is more narrowly drawn and consequently less vague than the statutes and ordinances involved in the above cases. However, we need not pass on this question, for we hold that § 42–85(5) is unconstitutional because of its overbreadth.

■ An ordinance or statute is overbroad when it regulates or prohibits constitutionally protected conduct which should be left to the private domain, that is, conduct which the national, state or local government simply does not have the right to control. § 42–85(5) makes it a crime for a poor person not to seek work or accept employment when it is offered to him. Although the goal of having everyone work may be laudable, this simply is an overreaching of the City's governmental power into private life. Furthermore, we believe that the freedom to accept or refuse employment is protected by the Fourteenth Amendment of the Constitution of the United States, which prohibits the deprivation of liberty without due process of law.

■ We are not alone in our appreciation of this legal point. A similar problem arose in Fenster v. Leary, 20 N.Y.2d 309, 229 N.E.2d 426, 427 (1967), in which the Court of Appeals in New York held invalid a state statute making it unlawful to be "a person who, not having visible means to maintain himself, lives without employment." The court reasoned:

"We are in agreement with plaintiff that subdivision 1 of section 887 of

the Code of Criminal Procedure is unconstitutional, on the ground that it violates due process and constitutes an overreaching of the proper limitations on the police power in that it unreasonably makes criminal and provides punishment for conduct (if we can call *idleness* conduct) of an individual which in no way impinges on the rights or interests of others and which has in no way been demonstrated to have anything more than the most tenuous connection with prevention of crime and preservation of the public order * * * other than, perhaps, as a means of harassing, punishing or apprehending suspected criminals in an unconstitutional fashion." 229 N.E.2d at 428.

Another case in which the concept of overbreadth was used to strike down a similar statute[1] was Lazarus v. Faircloth, 301 F.Supp. 266, 272 (S.D.Fla. 1969), in which the court said:

"An adjunct of the vagueness argument and an additional vice of this statute is its obvious overbroadness. Because of its vague language, it may be used to 'criminalize' conduct which is beyond the legitimate reach of the state's police power. That is, it punishes conduct of an individual which in no way impinges on the rights or interests of others. Fenster v. Leary, supra." 301 F.Supp. at 272.

And in Wheeler v. Goodman, 306 F. Supp. 58, 61 (W.D.N.C. 1969), a three-judge court struck down another similar statute,[2] holding in part that it was "so broad as to embrace, on its face, obviously innocent activities."

§ 42–85(7): "The following persons shall be guilty of vagrancy * * * Persons who loaf the streets habitually or who frequent the streets habitually at late or unusual hours of the night, or who loiter around any public place of assembly, without lawful business or reasons to be present."

We hold that this subsection is also void for overbreadth. It is beyond the reach of a penal ordinance to prohibit people from merely being on the streets "habitually" or even at late "or unusual" hours. Again, we feel that such a measure constitutes a deprivation of liberty without due process of law. The reasoning offered by the Ninth Circuit in Territory of Hawaii v. Anduha, 48 F.2d 171, 172–173 (9th Cir. 1931), is fully applicable here:

"All loitering, loafing or idling on the streets and highways of a city, even though habitual, is not necessarily detrimental to the public welfare nor is it under all circumstances an interference with travel upon them. It may be and often is entirely innocuous. The statute draws no distinction between conduct that is calculated to harm and that which is essentially innocent.

"Visitors, lured by the fame of our climate and of our natural scenery and the hospitality of our people, come here for recreation and pleasure. Many of them, having no other occupation, habitually but harmlessly idle or loiter upon our streets and highways. In their pursuit of happiness, which is a guaranteed right, they loi-

---

1. The Florida statute declared unconstitutional in *Lazarus*, Fla., § 856.02, F.S. A., contained the following subsection: "(21) [A]ll able bodied male persons over the age of eighteen years who are without means of support and remain in idleness, shall be deemed vagrants, and upon conviction shall be subject to the penalty provided in § 856.03."

2. The North Carolina statute declared void in *Wheeler*, N.C.Gen.Stat. § 14–336 (1953), provided in part: "If any person shall come within any of the following classes, he shall be deemed a vagrant, and shall be fined * * * or imprisoned * * *. "6. All able-bodied men having no other visible means of support who shall live in idleness upon the wages or earnings of their mother, wife or minor children, except of male children over eighteen years old."

ter before shop windows, pause to enjoy the changing colors of the ocean and to talk with friends. It would be shocking to say that so long as they are innocent of any wrong and conduct themselves with due regard to the rights of others and the good order of the community the legislature has the constitutional authority to declare them misdemeanants and subject them to arrest and imprisonment. Also, there are persons who, taking advantage of the leisure they have on the Sabbath, habitually go for long hikes along the public highways. When weariness overtakes them they stop for rest. Attracted by the beauties of the landscape they loiter and idle for as long as they choose. The free use of the highway by others is not impeded and the public peace is not disturbed. Is the legislature empowered to declare them lawbreakers? Children, who have reached the age of legal responsibility, on their way to and from school habitually loiter along the sidewalks. If the statute is constitutional they are in danger of imprisonment even though their manner of using the sidewalks is without probable injury or inconvenience to any one."

See also Lazarus v. Faircloth, supra, 301 F.Supp. at 272–273.

Furthermore, § 42–85(7) is unconstitutionally vague. In Scott v. District Attorney, Jefferson Parish, State of Louisiana, 309 F.Supp. 833, 836–837 (E. D.La. February 4, 1970), Judge Rubin held unconstitutional for vagueness and overbreadth the Louisiana statute, LSA–R.S. 14:107(7), which is identical to § 42–85(7), saying:

"Such vagueness has been found to be a common failing of laws against loitering and vagrancy, and it is shared by the Louisiana law. Just because a word like 'loiter' or 'loaf' is pejorative does not mean that it is definitive, nor does the phrase 'without lawful business' do more than beg the question of when loitering or loafing can themselves amount to 'lawful busi-

ness.' Louisiana considers it an asset to advertise the availability of numerous opportunities for socially acceptable loitering for tourists and vacationers. Their 'reason to be present' is considered 'lawful,' but it is difficult to discern on what rational basis the public can distinguish between strolling in the sunlight in Jackson Square and meandering at the International Airport near a car rental agency."

We agree with Judge Rubin and adopt his reasoning on this point as our own.

§ 42–85(8): "The following persons shall be guilty of vagrancy * * * Persons found in or near any structure, movable, vessel or private grounds without being able to account for their lawful presence therein."

▮ This subsection is void for vagueness and overbreadth. First, it is not clear under the terms of this subsection what type of account would be sufficient to render the suspect innocent of the crime of not being able to account for his lawful presence near any structure, movable, vessel or private grounds. Thus, the arresting officer has a vast amount of discretion in determining whether such a suspect is guilty of this crime, and this renders § 42–85(8) unconstitutionally vague. The subsection is also unconstitutional because of overbreadth. For under the terms of this ordinance the failure to convince a police officer that one's presence is lawful is in itself a crime, and this is apparently true whether or not probable cause for arresting the suspect for the commission of a crime is present. This is an overreaching of the penal power of the City. We agree with the reasoning of the court in Baker v. Bindner, 274 F.Supp. 658, 664 (W.D.Ky. 1967), in which an ordinance requiring that a person loitering or strolling give "a satisfactory account of himself" was declared unconstitutional for the following reason:

"To us it appears overbroad and vague. We do not believe that the requirement that an offender 'give a

satisfactory account of himself' passes constitutional tests. It places sole determination in the discretion of the policeman on the beat. The standard of 'satisfactory account' is not certain, for what may be satisfactory to one may be unsatisfactory to another * * *. Does the mere fact that one cannot give a satisfactory account of himself to the pleasure of the inquiring officer make him guilty of an unspecified crime? Such unbridled discretion cannot be constitutionally vested in the policeman or the court."

Although the word "satisfactory" is not in the section now under consideration, it would be unreasonable to suppose that the suspect would not be arrested under this subsection if his account did not satisfy the inquiring officer. Therefore, the reasoning in Baker v. Bindner, *supra*, is fully applicable to the case at bar.

*§ 42–90: "Any:*

*"(2) Idle person who, not having visible means to maintain himself, lives without employment;*

*"Shall be deemed an idle and disorderly person and, upon conviction thereof, shall be punished by a fine of not more than one hundred dollars or by imprisonment for any time not less than thirty days, or both, at the discretion of the court."*

■ We hold that this subsection of § 42–90 is unconstitutional because of overbreadth for the reasons stated in our discussion of § 42–85(5) earlier in this opinion.

Furthermore, the term "visible means to maintain himself" renders the subsection unconstitutionally vague. What constitutes "visible" means to maintain oneself? Must one walk around in the uniform of his occupation (if there is such a uniform) or have on his persons at all times a car signed by his employer certifying that he is employed? Must he carry a list of the securities he owns or a certain amount of money which could support him for a certain period of time? The ordinance is unclear.

We agree with the court in Goldman v. Knecht, 295 F.Supp. 897, 905 (D.Colo. 1969), when it said, "Finally, the clause 'not having any visible means of support' is unconstitutionally vague, since it is impossible for any person to be forewarned as to what he must display in order to possess visible means of support."

*§ 42–90: "Any*

*"(3) Person who, after having been directed by any officer or member of the police force to move away, shall remain or loiter in front of or in the neighborhood of any church or other place of public worship during the service therein or while the members of its congregation are repairing to or returning from such church or other place of public worship;*

*"(4) Person who, after having been directed by any officer or member of the police force to move away, shall remain or loiter in front of or in the neighborhood of any theatre, concert hall, ballroom or other place of public amusement during the time that such place shall remain open to the public or while the public are repairing thereto or returning therefrom;*

*"(5) Person who, after having been directed by any officer or member of the police force to move away, shall remain or loiter in front of or in the neighborhood of any coffeehouse, barroom or beer saloon situated within the limits of the city;*

*"(6) Person who shall, without legitimate business thereat, remain, loiter or idle his time on the sidewalks or public streets or places within the limits of the city after having been notified to move therefrom by any officer or member of the police force;*

*"Shall be deemed an idle and disorderly person and, upon conviction thereof, shall be punished by a fine of not more than one hundred dollars or by imprisonment for any time not less than thirty days, or both, at the discretion of the court."*

The case of Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S. Ct. 211, 15 L.Ed.2d 176 (1965), is pertinent to the consideration of these four subsections. In that case § 1142 of the Birmingham General City Code made it "unlawful for any person to stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on." The Supreme Court said that if this part of § 1142 were read in isolation, it would be clearly unconstitutional:

> "Literally read * * * the second part of this ordinance [the part quoted above] says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration. It 'does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' Cox v. State of Louisiana, 379 U.S. 536, 559, 579, 85 S.Ct. 453, 466, 469, 476, 13 L.Ed.2d 471, 487 (separate opinion of MR. JUSTICE BLACK)." 382 U.S. at 90, 86 S.Ct. at 213.

However, the Court did not so rule because it found that the Alabama Court of Appeals had not read § 1142 literally but had construed it narrowly:

> "The matter is not one which need be exhaustively pursued, however, because * * * the Alabama Court of Appeals has not read § 1142 literally, but has given to it an explicitly narrowed construction. The ordinance, that court has ruled, 'is directed at obstructing the free passage over, on or along a street or sidewalk by the manner in which a person accused stands, loiters or walks thereupon. Our decisions make it clear that the mere refusal to move on after a police officer's requesting that a person standing or loitering should do so is not enough to support the offense. * * * [T]here must also be a showing of the accused's blocking free passage * * *.' Middlebrooks v.

City of Birmingham, 42 Ala.App. 525, 527, 170 So.2d 424, 426.

"The Alabama Court of Appeals has thus authoritatively ruled that § 1142 applies only when a person who stands, loiters, or walks on a street or sidewalk so as to obstruct free passage refuses to obey a request by an officer to move on. It is our duty, of course, to accept this state judicial construction of the ordinance. * * * As so construed, we cannot say that the ordinance is unconstitutional though it requires no great feat of imagination to envisage situations in which such an ordinance might be unconstitutionally applied." 382 U.S. at 91, 86 S.Ct. at 213–214.

Thus, when given a narrow interpretation, the Birmingham ordinance, which is similar to the four subsections now under consideration, was upheld by the Supreme Court against the constitutional attack in that case. This Court has not been cited to any similarly narrow construction of these four subsections by the courts of Louisiana. However, it is our opinion that the subsections can be construed by this Court in such a narrow fashion so as to save them from constitutional attack. This method of constitutional interpretation is a well-recognized and much applied judicial practice. "Whenever possible, statutes must be interpreted in accordance with constitutional principles." American Power & Light Co. v. Securities & Exchange Commission, 329 U.S. 90, 108, 67 S.Ct. 133, 143, 91 L.Ed. 103 (1946). "[C]ourts are disinclined to adopt an interpretation of a statute that would extend its operation beyond what is warranted by the Constitution * * *." Texas Employers Insurance Association v. Felt, 150 F.2d 227, 233 (5th Cir. 1945). "[A] provision should be construed, if possible, to avoid doubts about its constitutionality." United States v. Bradley, 418 F.2d 688, 691 (4th Cir. 1969). "Where two constructions are permissible, one of which would invalidate and the other save a statute, the latter will be placed upon it." Arley v.

United Pacific Insurance Co., 379 F.2d 183, 188 (9th Cir. 1967).

Guided by these canons of judicial construction, we hold that the four subsections in question are only directed at conduct which obstructs free passage to and from places of public worship, places of public amusement, coffeehouses, barrooms, and beer saloons, and conduct which obstructs free passage along sidewalks, public streets and public places. We construe these subsections as *not* being designed to permit persons to stand near any of the designated places or on the sidewalks and public streets or in public places only at the whim of any police officer. As so interpreted, we are of the opinion that § 42–90(3), (4), (5), and (6) are constitutional and should be upheld. In holding as we do, we do not exclude the possibility of determining in the future, if sufficient evidence should be presented in this case, that any or all of the subsections in question may have been unconstitutionally applied against some of these plaintiffs or the class which they represent.

Other courts have adopted this method of judicial construction and have upheld similar loitering provisions. Anderson v. Shaver, 290 F.Supp. 920 (D.N.M. 1968); In re Huddleson (People v. Hill), 229 Cal.App.2d 618, 40 Cal.Rptr. 581 1964); Dominguez v. City and County of Denver, 147 Colo. 233, 363 P.2d 661 (1961).

Therefore, it is the judgment of this Court that the plaintiffs' motion for a summary judgment is granted to the extent that § 42–85(5), (7) and (8) and § 42–90(2) of the Code of the City of New Orleans adopted by Ordinance No. 828 M.C.S., as amended through March 31, 1969, are hereby declared to be unconstitutional, and their enforcement against plaintiffs and all others is permanently enjoined. The plaintiffs' motion for a summary judgment is denied to the extent that § 42–90(3), (4), (5) and (6) of the same Code are declared to be constitutional, and to the further extent that we decline to pass on the constitutionality of § 42–90(1), (7) and (8). The plaintiffs' request for injunctive relief against enforcement of these provisions is hereby denied.