**Daniel Dean BAKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44706.**

Court of Criminal Appeals of Texas.

March 29, 1972.

William H. Crenshaw, Jr., Lubbock, for appellant.

Thomas J. Purdom, County Atty., George L. Thompson III, Asst. County Atty., Lubbock, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of unlawfully carrying a switch-blade knife. The punishment was assessed at sixty days in jail.

At approximately 4:00 A.M. on August 14, 1969, Officers Aycock, Ontiveros, and Privett of the Lubbock Police Department, were returning to the police station after having answered a call in the southwestern part of that city. In the 1900 block of Broadway, they noticed two shabbily dress-ed male youths down the sidewalk away from an automobile parked at the curb. The street was well-lighted, and the officers noticed that the two young men were barefooted, poorly dressed, and had extremely long hair.

Officer Ontiveros recognized appellant and remembered that he had been recently "handled for drugs." The officers stopped and questioned appellant and his companion. Upon learning that appellant was un-employed, they arrested him for vagrancy, for having "no visible means of support". A search conducted incident to the arrest

revealed the knife, which was the subject of the present prosecution.

Appellant contends that the trial court erred in overruling his motion to suppress the fruits of that search. He contends that Article 607, Vernon's Ann.P.C., the statute used to justify the arrest, is unconstitutional and that therefore the search was invalid.[1]

Article 607, V.A.P.C., was passed in compliance with Article 3, Section 46, of the Constitution of Texas [2] which imperatively required the legislature to enact effective vagrancy laws. Ex parte Strittmatter, 58 Tex.Cr.R. 156, 124 S.W. 906. Its passage was deemed essential due to " . . . the growth of the state and the congestion in our large cities, where the idle, the vicious, and the depraved congregate around many public places . . . ." Ex parte Strittmatter, supra, at 907. The purposes of the Vagrancy Statute are: (1) to punish persons because of their status as vagrants [3]; and (2) to prevent future

---

1. The pertinent sections of Article 607, V.A.P.C., which are being challenged in the instant case define vagrants as:
   "(1) Persons known as tramps, wandering or strolling about in idleness, who are able to work and have no property to support them.
   "(2) Persons leading an idle, immoral or profligate life, who have no property to support them, and who are able to work and do not work.
   "(3) All persons able to work, have no property to support them, and who have no visible or known means of a fair, honest and reputable livelihood. The term 'visible or known means of a fair, honest and reputable livelihood,' as used in this article, shall be construed to mean reasonably continuous employment at some lawful occupation for reasonable compensation, or a fixed and regular income from property or other investments, which income is sufficient for the support and maintenance of such person.
   "(4) All able-bodied persons who habitually loaf, loiter and idle in any city, town or village, or railroad station, or any other public place in this State for the larger portions of their time, without any regular employment and without any visible means of support. An offense under this subdivision shall be made out if it is shown that any person has no visible means of support, and only occasionally has employment at odd jobs, being for the most of the time out of employment.
   . . . . .
   "(10) Every able-bodied person who lives without employment or labor, and who has no visible means of support.
   . . . . .
   "(12) All persons over sixteen years of age and under twenty-one, able to work and who do not work, and have no property to support them, and have not some known, visible means of a fair, honest and reputable livelihood, and whose parents, or those in loco parentis, are unable to support them, and who are not in attendance upon some educational institution."

   Since appellant was arrested under the authority of the above quoted provisions, we need not and do not consider the constitutionality of the remaining sections of the statute.

2. Repeal of Article 3, Sec. 46, Tex.Const., was proposed by HJR No. 3, Acts 1969, 61st Leg., p. 3230, and was approved by the voters at an election held on Aug. 5, 1969.

3. (B) ". . . that when the status or course of conduct of a person is that of one who habitually loafs, loiters, and idles in a town or village without any regular employment, and without visible means of support, he shall be punished because of such status or course of conduct . . ." Branch v. State, 73 Tex.Cr.R. 471, 165 S.W. 605, 606.

   This rationale was derived from the historical purpose of vagrancy laws. See, e. g. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (No. 70–5030, 1972); Handler v. Denver, 102 Colo. 53, 77 P.2d 132 (1938); Ledwith v. Roberts, 1 K.B. 232 (1937); Note, The Vagrancy Concept Reconsidered, 37 N.Y.U.L.Rev. 102 (1962); Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L.J. 1 (1960); Sherry, Vagrants, Rogues, and Vagabonds—Old Concepts in Need of Revision, 48 Calif.L.Rev. 557 (1962); Foote, Vagrancy-Type Law and Its Administration, 104 U.Pa.L.Rev. 603 (1956); 4 Blackstone, Commentaries on the Law of England 169 (Wendell ed.).

**448**

crimes which are thought to flow from the vagrant's mode of life.[4] The underlying rationale is that vagrants constitute a "moral pestilence"[5] against which the state has right to guard. City of New York v. Miln, 11 Pet. 102, 143, 9 L.Ed. 648 (1837).

On this appeal appellant contends that Article 607 is unconstitutionally vague and overbroad.

A statute is overbroad when it prohibits both activity which is protected by the Constitution of the United States and activity which is not so protected. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). As the Supreme Court noted in United States v. Reese, 92 U.S. 214, 23 L.Ed. 563 (1876):

"It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could rightfully be detained and who could be set at large."

The inherent defect in the sections of Article 607 which are being challenged in the instant case is that the legislature has made the mere status of being able bodied and unemployed a crime. Judge Woodley, writing for this court on motion for rehearing in Ex parte Mittelstaedt, 164 Tex.Cr.R. 115, 297 S.W.2d 153, stated:

"While idleness is a prolific source of crime, it is not competent for the legislature to denounce mere inaction as a crime without some qualifications."

The challenged sections of Article 607 make the status of poverty a crime without qualification, thus leaving this court to determine who may be punished and who may not. Compare Branch v. State, 73 Tex.Cr. R. 471, 165 S.W. 605, with Senegal v. State, 112 Tex.Cr.R. 408, 16 S.W.2d 1070.

Because he is of a certain status is not reason to punish a man as a criminal. Robinson v. California, 370 U.S. 660, 82 S. Ct. 1417, 8 L.Ed.2d 758 (1962). While it may be desirable that the state be enabled to anticipate, and thus prevent, future criminal activity, the price of doing so under this statute is to brand as present criminals both persons who might in the future commit an overt criminal act and those who may not. The status of being unemployed or without visible means of support is not a sufficient ground for criminal sanctions. Papachristou v. Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L. Ed.2d 110 (No. 70–5030, 1972); Gordon v. Schiro, 310 F.Supp. 884 (E.D.La.1970); Wheeler v. Goodman, 306 F.Supp. 58 (W.D. N.C.1969); Decker v. Fillis, 306 F.Supp. 613 (D.Utah 1969); Goldman v. Knecht, 295 F.Supp. 897 (D.C.Colo.1969); Smith v. Hill, 285 F.Supp. 556 (E.D.N.C.1968); Hayes v. Municipal Court of Oklahoma City, 487 P.2d 974 (Okl.Cr.App.1971); Balizer v. Shaver, 82 N.M. 347, 481 P.2d 709 (1971); State v. Grahovac, 480 P.2d 148 (Hawaii Sup.Ct.1971); Arnold v. Denver, 171 Colo. 1, 464 P.2d 515 (1970); Portland v. James, 251 Or. 8, 444 P.2d 554 (1968); Parker v. Municipal Judge of City of Las Vegas, 83 Nev. 214, 427 P.2d 642 (1967);

4. See, e. g., District of Columbia v. Hunt, 82 U.S.App.D.C. 159, 163 F.2d 833 (1947); Ex parte Oates, 91 Tex.Cr.R. 79, 238 S.W. 930; Ex parte Branch, 234 Mo. 466, 137 S.W. 886 (1911).

5. The full meaning of this phrase can best be understood by the context in which it was used. "We think it as competent and as necessary for a State to provide precautionary measures against the moral pestilence of paupers, vagabonds, and possibly convicts, as it is to guard against the physical pestilence which may arise from unsound and infectious articles im-

ported, or from a ship, the crew of which may be laboring under an infectious disease." Miln, supra at 143. This reasoning was specifically overruled in Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), the court stating that: "Whatever may have been the notion then prevailing [at the time *Miln* was written], we do not think that it will now be seriously contended that because a person is without employment and without funds he constitutes a 'moral pestilence'. Poverty and immorality are not synonymous."

Alegata v. Commonwealth, 353 Mass. 287, 231 N.E.2d 201 (1967); Fenster v. Leary, 20 N.Y.2d 309, 282 N.Y.S.2d 739, 229 N.E.2d 426 (1967).

■ A statute is unconstitutionally vague when it either forbids or requires "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . .." Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct 126, 70 L.Ed. 322 (1926).

■ Each of the challenged sections of Article 607 defines a vagrant as being a person who "has no visible means of support" [6] or who has "no property to support" him.[7] No standard is given to guide officers charged with enforcing this statute as to what is meant by these terms. Thus, the statute impermissibly places unfettered discretion in the hands of the police. Papachristou v. Jacksonville, supra; Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). A vagrancy prosecution cannot be used under our constitution as a substitute for a conviction which cannot be obtained on some other charge. Papachristou v. Jacksonville, supra. Vagrancy is not a shortcut to the requirements of due process of law. Mills v. Wainwright, 415 F.2d 787 (5th Cir. 1969); Green v. United States, 386 F.2d 953 (10th Cir. 1967); Portland v. James, supra.

Lacking intelligible standards to guide those charged with its enforcement, Sections 1, 2, 3, 4, 10, and 12, of Article 607, V.A.P.C., are violative of the Due Process Clause of the Fourteenth Amendment and cannot be upheld. Papachristou v. Jacksonville, supra; Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 414 F.2d 1097 (1968); Cantrell v. Folsom, 332 F.Supp. 767 (M.D.Fla.1971); Gordon v. Schiro, supra; Lazarus v. Faircloth, 301 F.Supp. 266 (S.D.Fla.1969); Kirkwood v. Ellington, 298 F.Supp. 461 (W.D.Tenn.1969); Goldman v. Knecht, supra; Smith v. Hill, supra; Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky. 1967); Knowlton v. State, 257 A.2d 409 (Me.Sup.Jud.Ct.1969); Portland v. James, supra; Parker v. Municipal Judge of City of Las Vegas, supra; Alegata v. Commonwealth, supra; Fenster v. Leary, supra.

The arrest of appellant being invalid, the trial court erred in overruling appellant's motion to suppress the fruits of that search. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

■ The state contends on this appeal that the arrest in question was valid under Article 14.03, Vernon's Ann.C.C.P. The fact that appellant was barefooted, had long hair, and was shabbily dressed does not constitute probable cause to arrest. See Barnett v. D'Artois, 331 F.Supp. 1310 (W.D.La.1971); Hughes v. Rizzo, 282 F.Supp. 881 (E.D.Pa.1968). Nor do the overall circumstances presented furnish the state with a valid "stop and frisk" situation. Compare Sibron v. New York, supra, with Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In view of our disposition of this cause other grounds of error will not be discussed. However, it should be noted that there is grave doubt that the knife introduced into evidence meets the definition of a switchblade knife. The knife before us here has neither a "spring" nor a "switch" and is what the legislature *probably* intended to define as a "throw blade knife." See Article 483, V.A.P.C. The arresting officers described it as a "Philippino flipswitch knife" which is opened by a throwing or flipping motion of the hand.

The judgment is reversed and the cause remanded.

---

6. Article 607, Sections 4, 10 and 12, V.A.P.C.

7. Article 607, Sections 1, 2, 3, 10, and 12, V.A.P.C.