**Affirmed and Memorandum Opinion filed May 10, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00532-CR

---

### ADRIAN HEATH, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 359th District Court
### Montgomery County, Texas
### Trial Court Cause No. 12-03-02580 CR

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Adrian Heath of illegal voting.[1] The trial court sentenced appellant to confinement for three years in the Institutional Division of the Texas Department of Criminal Justice and assessed a $10,000 fine. Appellant brings this appeal raising four issues: (1) the trial court lacked subject-matter jurisdiction; (2)

---

[1] This appeal was transferred to this court from the Ninth Court of Appeals. In cases transferred from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court if the transferee court's decision would have been inconsistent with the precedent of the transferor court. *See* Tex. R. App. P. 41.3.

section 1.015 of the Election Code is unconstitutional as applied; (3) the evidence is insufficient; and (4) the trial judge was disqualified. For the reasons stated below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a board-of-directors election for the Woodlands Road Utility District No. 1 (the "RUD") in Montgomery County, Texas, held on May 8, 2010. The RUD was created to build and maintain roads in The Woodlands, Texas, and is governed by an elected board of five directors. In May 2010, there were six candidates for three positions on the board. Three of those candidates were challengers Bill Berntsen, Peter J. Goeddertz, and Richard McDuffee.

On the day of the election, ten voters listed an identical address as their residence — 9333 Six Pines Drive, a Marriott Residence Inn ("the Inn") in The Woodlands. The ten voters were appellant, James Jenkins,[2] Berntsen, Goeddertz, McDuffee, Roberta Cook, Sybil Doyle,[3] Thomas Curry, Robert Allison, and Benjamin Allison. The Inn's records reflected Jenkins arrived on May 7 and departed May 9 and identified four other people in his room — appellant, Curry, Goeddertz, and McDuffee. Curry also registered for a room on May 7 for one adult.

Prior to the election, Phil Grant, the First Assistant District Attorney for Montgomery County, Texas, received a complaint that voters had illegally registered. After a preliminary investigation, Grant issued a letter to appellant, among others. The letter cautioned appellant against voting in the election and informed him there could be criminal charges. Grant's office finished its investigation and it was forwarded to the

---

[2] Jenkins was also convicted of illegally voting in an election in which he knew he was not eligible to vote. That conviction was reversed and remanded for a new trial due to jury charge error. *See Jenkins v. State*, 468 S.W.3d 656 (Tex. App.—Houston [14th Dist.] 2015), pet. granted).

[3] Doyle was also convicted of illegally voting in an election in which she knew she was not eligible to vote. That conviction was affirmed. *Doyle v. State*, 09-14-00458-CR, 2016 WL 908299, at *2-3 (Tex. App.—Beaumont Mar. 9, 2016, no pet.) (mem. op., not designated for publication).

office of the Secretary of State.

Election records from Montgomery County reflected that on appellant's registration application, signed March 5, 2010, he swore that he resided at the Inn but listed his mailing address as a post office box. Appellant admitted that he lived at 43 West Stony Bridge Court ("Stony Bridge") and had not spent a single night at the Inn when he swore to that information on the application. The first time appellant was inside a room at the Inn was the night before the election.

Appellant had a certified deed record for Stony Bridge; appellant had owned the property since 1990. Appellant had also claimed Stony Bridge as a residence with the Montgomery County Appraisal District (MCAD) for a homestead tax exemption; the exemption was in effect following the election, and the homestead was not located within the bounds of the RUD.

According to appellant, he stayed at the Inn the night before the election in an attempt to bolster the validity of his residence and the idea that he intended to return. He brought only an overnight bag containing some clothes, a book, and toiletries to the Inn. Appellant admitted that his family, pet, and possessions all remained at his home at Stony Bridge, without interruption, throughout the time of the RUD election. Appellant acknowledged that he had not rented a room at the Inn in March 2010. Appellant claimed he lived at the Inn on May 7 and May 8, but admitted that prior to and after those dates he lived at his home on Stony Bridge. From 1992 until the RUD election, appellant had voted based on his residence at Stony Bridge.

Kandy Heath, appellant's wife, testified that apart from several overnight absences, appellant lived with her at their home during the time of the RUD election. All of appellant's belongings remained at their home except for what items he put in a duffel bag during those few absences. Appellant always returned to their home after those temporary absences.

3

The election occurred on May 8, 2010, and the ten voters cast votes for each of the three challengers, Berntsen, Goeddertz, and McDuffee, who received more votes than the incumbents. The incumbent RUD directors filed suit contesting the election results.[4]

Subsequently, appellant was indicted for the third-degree felony of illegal voting.[5] The indictment alleged that he voted in an election "when he knew that he did not reside in the precinct in which he voted." As charged, the jury found appellant guilty.

## II. JURISDICTION

In his first issue, appellant claims the trial court lacked subject-matter jurisdiction to hear this case. Appellant then argues the Office of the Attorney General ("OAG") did not have authority to prosecute this case. Specifically, appellant contends no complaint was filed by two or more registered voters prior to the investigation by the OAG and the indictment. Appellant relies upon section 273.001(a) of the Texas Election Code, which provides:

> If two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection with the election to the county or district attorney having jurisdiction in that territory, the county or district attorney shall investigate the allegations. If the election covers territory in more than one county, the voters may present the affidavits to the attorney general, and the attorney general shall investigate the allegations.

*See* Tex. Elec. Code Ann. § 273.001(a) (West 2010). According to appellant, the lack of evidence in the record that "two or more registered voters" presented such affidavits deprived the OAG of authority to prosecute this case. Citing *Saldano v. State*, 70

---

[4] The ten votes were found "not valid." The trial court's judgment was affirmed. *See McDuffee v. Miller*, 327 S.W.3d 808 (Tex. App.—Beaumont 2010, no pet.).

[5] At the time of the election, the offense was a third-degree felony. *See* Act of May 9, 1985, 69th Leg., R.S., ch. 211, §1, 1985 Tex. Gen. Laws 881 (amended 2011). As amended, the severity of the offense is increased to a second-degree felony. *See* Tex. Elec. Code Ann. § 64.012(b) (West Supp. 2015).

S.W.3d 873 (Tex. Crim. App. 2002), appellant also asserts because the OAG's assistance was not requested by the District Attorney of Montgomery County, the OAG lacked authority to institute a criminal prosecution.

Appellant cites no authority, and *Saldano* does not hold, that the OAG's lack of authority, if any, deprives the trial court of subject-matter jurisdiction. Appellant's only argument is that the OAG did not have authority to institute a criminal prosecution. Appellant does not claim this issue was presented to the trial court and the failure to do so waived any error. *See* Tex. R. App. P. 33.1; and *Stephens v. State*, 978 S.W.2d 728, 730 (Tex. App.—Austin 1998, pet. ref'd) (error was waived by appellant's failure to object to authority of attorney pro tem during trial). *See also Hartsfield v. State*, 200 S.W.3d 813, 816 (Tex. App.—Texarkana 2006, pet. ref'd); *Modica v. State*, 151 S.W.3d 716, 721 (Tex. App.—Beaumont 2004, pet. ref'd); and *Marbut v. State*, 76 S.W.3d 742, 750 (Tex. App.—Waco 2002, pet. ref'd). Section 273.021 provides that the OAG "may prosecute a criminal offense prescribed by the election laws of this state." *Medrano v. State*, 421 S.W.3d 869, 877 (Tex. App.—Dallas 2014, pet. ref'd) (citing Tex. Elec. Code Ann. § 273.021(a) (West 2010)). Moreover, section 273.001(b) of the Texas Election Code provides ". . . the attorney general may conduct an investigation on the officer's own initiative to determine if criminal conduct occurred in connection with an election." Tex. Elec. Code Ann. § 273.001(b) (West 2010). Likewise, subsection (d) of that statute provides that "[o]n referral of a complaint from the secretary of state under Section 31.006, the attorney general may investigate the allegations." Tex. Elec. Code Ann. § 273.001(d) (West 2010).[6] Accordingly, contrary to appellant's assertions, the election code expressly allows the OAG to investigate and prosecute criminal offenses in connection with an election.

Appellant's issue argues the trial court lacked subject-matter jurisdiction. Subject-

---

[6] The record contains evidence that Grant forwarded his investigation to the office of the Secretary of State.

matter jurisdiction may be raised for the first time on appeal. *See Mata v. State,* 991 S.W.2d 900, 902 (Tex.App.—Beaumont 1999, pet. ref'd). Subject-matter jurisdiction is established if the indictment gave notice the State intended to prosecute the defendant for an offense of which the trial court had jurisdiction. *Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007). The indictment in this case gave appellant notice that the State intended to prosecute him for a felony offense and the trial court has jurisdiction over felony offenses. Accordingly, the indictment was sufficient to vest the district court with subject-matter jurisdiction. *Id.* Because the trial court had subject-matter jurisdiction and appellant's other arguments were not preserved for our review, appellant's first issue is overruled.

### III. VAGUENESS CHALLENGE

Appellant's second issue asserts that section 1.015 is unconstitutionally vague as applied to him because the definition of "residence" is fatally ambiguous and encourages arbitrary enforcement of the penal law in violation of appellant's right to due process under the state and federal constitutions.[7]

### A. Standard of Review

We "construe a statute according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended." *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). A statute is unconstitutionally vague when persons of common intelligence must necessarily guess at its meaning and may differ as to its application. *Baker v. State*, 478 S.W.2d 445, 449 (Tex. Crim. App. 1972). When a statute is not ambiguous, we assume the Legislature meant what it has expressed, and we should not add or subtract from the

---

[7] The record reflects appellant filed a motion for new trial raising this issue and obtained the trial court's ruling on the motion, thus demonstrating the requirement of presentment was fulfilled. *See Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006). *See also Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998).

meaning of the statute. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009). The standard of review when considering whether a statute is vague is the same under both federal and State Constitutions. *See Ely v. State*, 582 S.W.2d 416 (Tex. Crim. App. 1979)

When a statute is challenged as unconstitutionally vague "as applied," we "need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct." *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989). The fact it may be unconstitutional as applied in other circumstances is insufficient. *Cain v. State*, 855 S.W.2d 714, 718 (Tex. Crim. App. 1993). We must look at appellant's conduct alone and then examine whether that conduct was clearly prohibited by the statute. *Id.*

## B.    Analysis

In an appeal arising from another conviction for illegally voting in this same election, the Beaumont Court of Appeals considered whether the term "residence," as used in section 1.015 of the Election Code, is unconstitutionally vague. *Doyle v. State*, 09-14-00458-CR, 2016 WL 908299, at *2-3 (Tex. App.—Beaumont Mar. 9, 2016, no pet.) (mem. op., not designated for publication). Doyle challenged the trial court's denial of her motion to quash the indictment on the grounds that the meaning of the term "residence" is so vague it violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Doyle argued because the Election Code's residence requirements are so uncertain they cannot be enforced, the trial court should have quashed her indictment.

The *Doyle* court reasoned that "[a]lthough several factors are used under the Election Code to determine whether an individual has established 'residence' within an election district," that fact "does not demonstrate that persons of ordinary intelligence cannot determine whether they are eligible (or ineligible) to vote in an election when

7

they reside outside an election district's boundaries." *Id.* at *3. The court decided:

> The plain language of section 1.015 makes it clear that a voter cannot establish residence by being in a place temporarily while at the same time never intending to make that place her home. Tex. Elec. Code Ann. § 1.015(a), (d). The provision is not vague, and reasonable voters would not be misled by the Election Code's requirement that the voter both be present within the election boundaries of the entity holding the election and while there, the voter must also have the intent to make a home within the district to cast a legal vote in the entity's election.

The court concluded the residence requirements of the Election Code regarding residence are not ambiguous and do not subject voters like Doyle to absurd results. *Id.* For the reasons set forth below, we agree with the *Doyle* court.

A person commits the offense of illegal voting "if the person: (1) votes or attempts to vote in an election in which the person knows the person is not eligible to vote." Act of May 9, 1985, 69th Leg., R.S., ch. 211, §1, 1985 Tex. Gen. Laws 881 (amended 2011) (current version at Tex. Elec. Code Ann. § 64.012(a) (West. Supp. 2015)). To be eligible to vote in an election in this state, a person must, among other things, "be a resident of the territory covered by the election for the office or measure on which the person desires to vote." Tex. Elec. Code Ann. § 11.001(a)(2) (West 2010).

A residence is "one's home and fixed place of habitation to which one intends to return after any temporary absence." Tex. Elec. Code Ann. § 1.015(a) (West 2010). A residence is not "lost" by leaving "to go to another place for temporary purposes only," nor is it acquired by going to another place "for temporary purposes only and without the intention of making that place the person's home." Tex. Elec. Code Ann. § 1.015(c) and (d) (West 2010).

Nowhere in his brief does appellant identify what part of the definition of residence is incomprehensible. The statute clearly and specifically provides that if a person intends to return to his home after a temporary absence, his home is his

8

residence; his home is still his residence even if he goes to another place temporarily; and going to another place temporarily, with no intention of making that place home, does not alter his residence. Thus the challenged definition is clear, specific, and easily understandable by any person of ordinary intelligence. *See Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. [Panel Op] 1978).

When we apply the definition to appellant's specific conduct, it is clear the statute is not impermissibly vague. The record reflects appellant's home was the house on Stony Bridge. He left that home to go to the Inn. The absence was temporary as evidenced by the fact that he only took an overnight bag containing some clothes, a book, and toiletries, and left everything else, including his family and pet. There was no evidence that appellant was leaving his family or intended to make the Inn his home. Considering appellant's conduct alone, his residence never changed from the house on Stony Bridge. Accordingly, his conduct was clearly prohibited by the statute. *See Cain*, 855 S.W.2d at 718.

Appellant argues he did not know his actions violated the law because the legality of his claimed residence was not established until the election contest determined he was not a resident of the Inn. As explained above, appellant's residence never changed. Thus it was not established for the first time by the election contest.

Further, appellant claims subsection (b) requires a person of ordinary intelligence to know the common law in order to avoid violating the statute. Subsection (b) expressly provides that the statutory definition controls over the common law. Tex. Elec. Code Ann. § 1.015(b) (West 2010).

Appellant also contends the vagueness of the definition of "residence" encourages arbitrary and erratic arrests and convictions for illegal voting based upon the "wrong residence." Again, as noted above, appellant only had one residence. Because the record is devoid of any evidence that his absence from Stony Bridge was anything other than

9

temporary, or that he intended the Inn to become his home, the Inn was never his residence.

We therefore conclude the definition of "residence" is not vague as applied to appellant. Issue two is overruled.

## IV.    SUFFICIENCY OF THE EVIDENCE

In his third issue, appellant contends the evidence was legally and factually insufficient to support his conviction. We address appellant's argument regarding the sufficiency of the evidence in accordance with *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

### A.    Standard of review

When reviewing the sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences therefrom. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.*

### B.    Analysis

As pertinent to the fact of this case, a person commits the offense of illegal voting if he "votes or attempts to vote in an election in which the person knows the person is not eligible to vote." Act of May 9, 1985, 69th Leg., R.S., ch. 211, §1, 1985 Tex. Gen. Laws 881 (amended 2011). To be eligible to vote in an election in this state, a person must, among other things, "be a resident of the territory covered by the election for the

10

office or measure on which the person desires to vote." Tex. Elec. Code Ann. § 11.001(a)(2) (West 2010). Thus the State is required to show a defendant voted in an election knowing he was not a resident of the territory covered by the election for the office on which he desired to vote. *Medrano*, 421 S.W.3d at 869. This does not require the State to prove a defendant subjectively knew he was not eligible to vote; it needed only to prove he voted in the election at issue when he knew he was not a resident of the territory for which he was voting. *Id.* Ignorance of the law is no excuse. *Id*.

As he admits in his reply brief, appellant's presence at the Inn was solely "to make his residence *for voting purposes* a hotel." (Emphasis added.) Thus appellant concedes his presence at the Inn was not for the purposes of making it his "fixed place of habitation" to which he intended to return after a temporary absence. Appellant's admission also reflects that he knew he could not vote as a resident of Stony Bridge.

The crux of appellant's argument is that he believed it was legal for him to register and vote from the Inn despite the fact that it was not his residence. The jury, however, rejected appellant's affirmative defense of mistake of law and found him guilty.

The evidence showed appellant lived at a home outside the territory covered by the RUD district, registered to vote using the address of the Inn because it was inside that territory, voted in the election as a resident of that territory, and knew when he registered to vote and when he voted that he was not a resident of the Inn and did not intend to reside there. Consequently, the State provided evidence beyond a reasonable doubt that appellant knew the facts making him ineligible to vote, which is all that was required. *See id.*

We therefore conclude a rational trier of fact could have found appellant voted in an election in which he knew he was not eligible to vote. We hold the evidence was legally sufficient to support appellant's conviction and overrule his second issue.

11

In his fourth issue, appellant complains that he was denied the right to an impartial judge and thus his conviction is void. Appellant makes two arguments regarding this issue. First, he complains the presiding judge erred in denying his motion to recuse. Second, appellant asserts the record reflects the trial judge was biased.

## A. Denial of the motion to recuse

A judge must recuse when "(1) the judge's impartiality might reasonably be questioned or (2) the judge has a personal bias or prejudice concerning the subject matter or a party." Tex. R. Civ. P. 18b(1), (2); *Gaal v. State*, 332 S.W.3d 448, 453 (Tex. Crim. App. 2011). *See In re Joyner*, 357 S.W.3d 844, 845 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993)) (holding that "absent explicit or implicit legislative intent indicating otherwise" civil rules of procedure governing recusal apply in criminal cases).

### 1. *Standard of review*

An order denying a motion to recuse is reviewed for an abuse of discretion. *See* Tex. R. Civ. P. 18a(j)(1)(A); *DeLeon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004). Under this standard, a trial court abuses its discretion only if the ruling was not within the zone of reasonable disagreement. *See Gaal*, 332 S.W.3d at 456. We consider the totality of the evidence presented at the hearing on the recusal motion to determine if the record reveals sufficient evidence supporting the trial court's ruling. *Id.*

### 2. *Analysis*

Trial was set for Monday, June 24, 2013. On June 14, 2013, appellant filed a first amended motion to recuse the trial judge,[8] alleging the trial judge had obtained

---

[8] Appellant's first motion for recusal alleged the trial judge should recuse because he had "a personal bias or prejudice." Appellant specified that the judge was running for election against appellant's counsel and had refused to transfer the case to a different court. It was denied by the trial

information through extrajudicial sources and formed an opinion about the defendant's conduct and role in this case. The motion also alleged that "the trial judge had substantive ex parte communications with the prosecution in this case that indicate [sic] a coordination with the prosecution and a bias in favor of the prosecution." Following a hearing, the presiding judge denied the amended motion to recuse.

a. Extrajudicial source

In general, partiality or bias must stem from an extrajudicial source and result in an opinion on the merits of the case beyond what the judge learned from participating in the case. *See Roman v. State*, 145 S.W.3d 316, 321 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). "Extrajudicial" is defined as "[o]utside court" or "outside the functioning of the court system," and "[n]ot done or made as a part of a judicial proceeding." *Id*. (citing BLACK'S LAW DICTIONARY 606 (7th ed. 1999)). Thus, if a statement is made within the context of a judicial proceeding, and repeated therein, it cannot be considered as arising from an extrajudicial source. *Id*.

In his affidavit, appellant's counsel averred that on Thursday, May 16, 2013, he met with the prosecutor, who wanted to try appellant and Jenkins together, or try appellant first. Counsel reminded the prosecutor that the trial judge had said the trials would be conducted from the lowest cause number to the highest, thus Jenkins would be tried first. Counsel told the prosecutor that he had spoken with some of the other defense attorneys about consolidating all the trials. The prosecutor reminded counsel that the trial judge had also stated that he did not want all of the trials combined.

On Friday, May 17, 2013, counsel returned a phone call from the trial judge. According to counsel, the trial judge stated, "I understand that your client and this

---

judge on May 15, 2012, and then by the presiding judge on May 29, 2012. Appellant does not complain of the order denying his first motion to recuse.

13

Jenkins fellow are more culpable than the others, that they were the ring-leaders" and that he thinks they should be put on trial before the other defendants with the same jury.

Counsel averred that he became concerned there had been ex parte communications between the trial judge and the prosecutor "because the Judge now wanted to try my client with James Jenkins just as [the prosecutor] had told me the day before." Counsel "wondered how the Judge came to believe that my client and James Jenkins were 'more culpable than the others' or were 'the ring-leaders' since that is not contained in the allegations found at that time in the court's file. The only way he could have such knowledge would be if some person gave him that knowledge outside the courtroom pretrial hearing that we had held in April." Counsel stated his belief that the trial judge "has communicated with persons about the facts of this case through extrajudicial communications without my presence and that he has reached conclusions of critical facts in this case without hearing any evidence."

At the hearing on appellant's motion to recuse, the prosecutor stated that at a pretrial hearing on March 28, "statements were made using a very significant legal word, which was that trying defendants, Heath and Jenkins, could be dispositive of all seven cases." According to the prosecutor's verified response to the motion to recuse, "in-court, on-the-record statements of the prosecution on March 28, 2013, provide legitimately-formed inferences for a reasonable trial attorney or trial judge to determine the State's position as to the relative culpability of Heath and Jenkins, without serving to bias the trial court against those two defendants." At the hearing, and in his response, the prosecutor stated he has never had ex parte communications with the trial judge.

During the hearing, counsel admitted that he had no evidence that the prosecutor had ex parte communications with the trial judge. Counsel further testified that he did not recall if, at a pretrial hearing approximately three months before the motion was filed, the prosecutor had suggested that trying appellant and Jenkins together would be dispositive of the other individuals similarly charged. However, counsel did recall that

14

the prosecutor suggested that if some of the defendants were tried first, the trials might be dispositive of the others.

We cannot say the record reflects the partiality or bias, if any, arose from an extrajudicial source. Rather, there is every indication that the trial judge's comments represent ideas formed on the basis of events occurring in the course of prior proceedings. *See Roman*, 145 S.W.3d at 321–22. Thus, we conclude the record fails to establish that the trial court's comments originated from an extrajudicial source.

### b. Impartiality or bias

In the context of this case, recusal is warranted if the trial judge's impartiality might reasonably be questioned or he has a personal bias. *See* Tex. R. Civ. P. 18b(2). Impartiality is demonstrated only when it appears that the judge harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside. *Rhodes v. State*, 357 S.W.3d 796, 799 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Bias arises from what the judge knows and feels. *Id.* Where bias is alleged, but does not originate from an extrajudicial source, recusal is proper only where the bias indicates a "high degree of favoritism or antagonism." *Id*. at 800.

Appellant argues the trial judge's comments reflect that he reached a conclusion as to appellant's culpability and thus it was an abuse of discretion for the presiding judge to deny the motion to recuse. As support, appellant relies on *Norton v. State*, 755 S.W.2d 522, 523 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd), and *Jefferson v. State*, 803 S.W.2d 470 (Tex. App.—Dallas 1991, pet. ref'd). In both cases, however, the trial court "unequivocally told the parties what the punishment would actually be." *Gaal*, 332 S.W.3d at 457. Because nothing in the record reflects the trial judge pre-judged appellant's punishment, neither *Norton* nor *Jefferson* are applicable to the case at bar. *See Jefferson*, 803 S.W.3d at 472; *Norton*, 755 S.W.2d at 524.

The only evidence appellant refers to regarding bias concerns events that occurred

15

after the hearing on the motion to recuse. We do not consider that evidence in determining if the trial court erred in overruling appellant's motion. *See Gaal*, 332 S.W.3d at 456. Because the record does not demonstrate either the trial judge's comments originated from an extradjudicial source or that he harbored an aversion or hostility to appellant, we conclude the presiding judge did not abuse his discretion in denying the motion to recuse. *Id.*

## B.    Evidence of bias

Appellant contends the record reflects the trial judge "created an atmosphere within the courtroom to give the jury the impression that Appellant was obviously guilty as charged and Appellant's proof should not be taken seriously." Appellant did not object to any alleged bias or prejudice by the trial judge during trial or in a motion for new trial. Consequently, he has not preserved his claim for review. *See* Tex. R. App. P. 33.1; *Cole v. State*, 931 S.W.2d 578, 579–80 (Tex.App.—Dallas 1995, pet. ref'd); *Cole v. State*, 757 S.W.2d 864, 865–66 (Tex.App.—Texarkana 1988, pet. ref'd).

Moreover, the record does not support appellant's contention. Appellant claims the trial judge's bias was evident from remarks he made. The record reflects the State objected when appellant offered a tax-abatement document as evidence that his motive to vote in the election was to receive a tax abatement. During a bench conference out of the jury's presence, the trial judge remarked, "If that's what the motive is, then the wrong–the wrong method doesn't justify the means." Appellant's counsel responded, "That's true."  The trial judge admitted the tax-abatement document. Appellant claims the trial judge's remark reflects his belief that what appellant did was wrong.

The record reflects the trial judge was responding to the State's assertion the tax abatement was not relevant. Subsequently, the trial judge stated:

Well, the wrong motive for the wrong reason is irrelevant if it doesn't have
-- if it doesn't go to proving or disproving one of the elements of the
offense. And I want you to address how this Defendant's Exhibit Number

16

31 shows a motive that shows the Defendant is not guilty of voting or attempting to vote in an election in which he knows he is not eligible to vote in. Which one of those elements would this motive go to other than just -- or is what I am gathering and what the State is contending, is that there is a motive that the Defendant seems to be using here which is contending that there are things he disagrees with and may be inappropriate in the way this district is being run and then he acts to stop that.

Taken in context, and coupled with his ruling in appellant's favor, the trial judge's remark does not indicate a high degree of favoritism toward the State or antagonism against appellant.

Appellant also asserts the trial judge showed bias by refusing to admit certain emails and audio recordings. The trial judge found the evidence contained hearsay, could be elicited within the rules of evidence, and was cumulative. Nothing in the record reflects the trial judge's rulings were based on anything other than his understanding of the rules of evidence.

"Recusal is generally not required purely on the basis of judicial rulings, remarks, or actions." *Rhodes*, 357 S.W.3d at 800. These will usually be grounds for reversal if in error, but not for recusal because they would not typically evidence the degree of favoritism or antagonism required. *Id.* However, if the facts are such that a reasonable person would harbor doubts as to the impartiality of the trial judge, recusal is appropriate. *Id.* (citing *Kemp v. State*, 846 S.W.2d 289, 305 (Tex. Crim. App.1992)). Our examination of the record leads us to conclude that the trial judge's remarks and rulings do not establish the trial judge exhibited a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Gaal*, 332 S.W.3d at 458.

Lastly, appellant contends the trial judge's sentence of imprisonment for three years is evidence of bias. When sentence was pronounced, the trial judge noted that a prison sentence of three years was "a sentence that was given by another jury." He then made an independent finding that under the circumstances of this case, a sentence of

confinement for three years was fair and proper. The range of punishment for the offense, a third degree felony, was from two to ten years. Tex. Penal Code Ann. § 12.34 (West 2011). Thus appellant was sentenced at the lower end of that range. Appellant cites no authority that his sentence was so unusual as to constitute evidence of bias.

For the reasons set forth above, we overrule appellant's fourth issue.

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


/s/    John Donovan
        Justice


Panel consists of Justices Christopher and Donovan and Guiney.[9]
Do Not Publish — Tex. R. App. P. 47.2(b).

---

[9] The Honorable Kristin M. Guiney sitting by assignment.